**Alfred RICCIUTI, et al., Plaintiffs,**

v.

**NEW YORK CITY TRANSIT AUTHORITY, et al., Defendants.**

**No. 90 Civ. 2823 (CSH).**

United States District Court, S.D. New York.

Dec. 13, 1990.

---

Murphy & O'Connell, Kathleen M. O'Connell, of counsel, New York City, for plaintiffs.

Albert C. Cosenza, Steve Efron, of counsel, Brooklyn, N.Y., for New York City Transit Authority, Transit Authority Police Dept., Vincent del Castillo, Henry Lopez and R.L. Wheeler.

## MEMORANDUM OPINION
## AND ORDER

HAIGHT, District Judge:

In this civil rights action arising out of the arrests of plaintiffs by a New York City Transit Police officer, certain defendants move to dismiss the complaint under Rule 12(b)(6), F.R.Civ.P., for failure to state a claim upon which relief may be granted. Plaintiffs cross-move under Rule 15(a) for leave to file and serve an amended complaint.

### Background

Plaintiffs Alfred Ricciuti and Daniel Ricciuti are New Jersey residents. Alfred Ricciuti is the uncle of Daniel Ricciuti. Plaintiffs assert that on April 30, 1989, shortly before five p.m., they were walking along 161st Street in the Bronx, having watched a baseball game at Yankee stadium. Alfred Ricciuti became involved in an altercation with defendant Harlice Watson, a New York City Corrections officer who was not in uniform. Plaintiffs allege that during the course of that altercation Watson assaulted Alfred Ricciuti, knocked him to the ground, and menaced Ricciuti with a

handgun. Watson then left the scene but returned with defendant Henry Lopez, a uniformed New York Transit Police officer from Transit Police District 11, located at the River Avenue subway station. Plaintiffs allege Lopez threw Alfred Ricciuti against a building wall, searched him, handcuffed him, and placed him under arrest. Lopez, Watson and Alfred Ricciuti then began to walk to the Transit Police Station located in the subway station at River Avenue. Lopez is alleged to have turned and kicked Daniel Ricciuti stating that Daniel Ricciuti, was following too closely. At the Transit Police Station plaintiffs allege that defendant R.L. Wheeler, a Transit Authority Police lieutenant and the commanding officer on duty, refused to permit Alfred Ricciuti to make a complaint against Watson. Wheeler authorized Lopez to process the arrest and to lock Alfred Ricciuti in a holding pen. Watson then threw Daniel Ricciuti against the wall of the police station and placed him under arrest as well, in the presence of Lopez and Wheeler, then processed Daniel Ricciuti's arrest and placed him in a holding pen. Plaintiffs further allege that Watson swore out a felony complaint falsely charging plaintiffs with felonious assault and aggravated harassment, and racial epithets against Watson by Alfred Ricciuti. These charges were ultimately dismissed by the Bronx Criminal Court. This civil rights action followed.

Plaintiffs have sued Lopez, Wheeler, and Watson, the three individuals involved in the alleged incidents. In addition, plaintiffs have named as defendants the New York City Transit Authority ("TA"); the New York City Transit Police Department, also referred to as the Transit Authority Police Department ("TAPD"); the Commissioner of the TAPD, Vincent del Castillo; the City of New York, and the New York City Corrections Commissioner, Richard Koehler. Plaintiffs asserted against these defendants direct constitutional claims, and also causes of action under 42 U.S.C. §§ 1981, 1983, 1985(2) and (3), and 1986, as well as pendent state common law claims.

The TA, TAPD and del Castillo moved to dismiss the claims against them under Rule 12(b)(6). In their response to that motion, plaintiffs cross-moved under Rule 15(a) to amend their complaint. The proposed amendment eliminates plaintiffs' claims under 42 U.S.C. §§ 1981, 1985 and 1986. The constitutional claims remain as do causes of action asserted under § 1983 and the state law claims.

Plaintiffs' proposed amended complaint quotes or summarizes three written reports referred to *infra*. The complaint is deemed to include documents incorporated in it by reference for Rule 12(b)(6) purposes. *Goldman v. Belden*, 754 F.2d 1059, 1065–1066 (2d Cir.1985).

Plaintiffs' claims against the moving defendants are based upon *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), which held that municipalities are "persons" within the meaning of § 1983. Subsequent to *Monell*, the Supreme Court has ruled that a municipality can be held liable in a § 1983 suit for a constitutional violation "only where its policies are the 'moving force [behind] the constitutional violation.'" *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389, 109 S.Ct. 1197, 1205, 103 L.Ed.2d 412 (1989) (citing *Monell v. Dept. of Soc. Serv. of City of New York*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611). Under *Monell* and subsequent cases, federal courts require § 1983 plaintiffs to prove (1) the existence of a municipal custom or policy, *see Oklahoma v. Tuttle*, 471 U.S. 808, 829–30 and n. 3, 105 S.Ct. 2427, 2439 and n. 3, 85 L.Ed.2d 791 (1985) and (2) some "affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City v. Tuttle*, at 823, 105 S.Ct. at 2436. In *Batista v. Rodriguez*, 702 F.2d 393, 397 (2d Cir.1983), the Second Circuit said:

> to hold a city liable under § 1983 for the unconstitutional actions of its employees, a plaintiff is required to plead and prove three elements: (1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right.

Where as here the policy or custom alleged against a municipality is a failure

adequately to supervise or train its employees, "the identified deficiency in a city's training program must be closely related to the ultimate injury." *City of Canton, Ohio v. Harris,* 489 U.S. at 391, 109 S.Ct. at 1206.

The issue is whether plaintiffs' proposed amended complaint contains factual allegations sufficient to satisfy these standards of recovery. In evaluating the pleading, I recognize that a motion to dismiss under Rule 12 must be denied "unless it appears beyond a doubt that the plaintiff can prove no set of fact in support of his claim which would entitle him to relief. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974) (citing *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957)), and that the court must accept the complaint's well-pleaded allegations of facts as true together with such reasonable inferences as may be drawn in the pleader's favor. *Murray v. City of Milford Connecticut,* 380 F.2d 468, 470 (2d Cir.1967); *Scheuer,* 416 U.S. at 236, 94 S.Ct. at 1686.

■ The gravamen of plaintiffs' charge against the TA, TAPD and Chief del Castillo is that they failed to supervise or provide proper training to Lopez and Wheeler in the making of lawful arrests, causing those individuals to violate plaintiffs' constitutional rights. Failure to supervise employees or to provide proper training is not actionable unless the failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris,* 489 U.S. at 388, 109 S.Ct. at 1204.

To the extent that plaintiffs contend the TA defendants' deliberate indifference to constitutional rights may be inferred from the single incident alleged in the complaint, I reject the contention. It is true that shortly after *Monell* was decided, the Second Circuit said in *Owens v. Haas,* 601 F.2d 1242, 1246 (2d Cir.1979) that "a single brutal incident" may be sufficient to support an inference of repeated course of conduct by offending officers and deliberate indifference by their supervisors. However, *Owens* involved a "brutal and premeditat-

ed" beating of an inmate in the presence of seven prison guards. The court of appeals concluded that "the nature of the beating and the number and rank of officers involved" warranted limited discovery into questions of supervision and training. *Id.* at 1246. In the case at bar, the initial arrest of Alfred Ricciuti by Transit Officer Lopez was presumably made on the complaint of Corrections Officer Watson; Lopez did not witness the incident and his conduct at the scene of arrest bears no resemblance to the beating in *Owens.*

What thereafter allegedly occurred at the Transit Police Station house constitutes more aggravated conduct. However, more recent authority casts doubt upon the legal sufficiency of a single incident to furnish the basis for an inference of a policy or practice sufficient for municipal liability. In *Oklahoma City v. Tuttle, supra,* 471 U.S. at 821, 105 S.Ct. at 2435 the Court disapproved the trial court's instruction that the jury could infer from a "single, unusually excessive use of force ... that it was attributable to inadequate training or supervision amounting to 'deliberate indifference' or 'gross negligence' on the part of the officials in charge." The Court said:

> We think this inference unwarranted; first, in its assumption that the act at issue arose from inadequate training, and second, in its further assumption concerning the state of mind of the municipal policy makers. But more importantly the inference allows a § 1983 plaintiff to establish municipal liability without submitting proof of a single action taken by a municipal policy maker. The foregoing discussion of the origins of *Monell's* "policy or custom" requirement should make clear that, at the least, that requirement was intended to prevent the imposition of municipal liability under circumstances where no wrong could be ascribed to municipal decision makers.

*See also City of Canton, Ohio v. Harris, supra,* 489 U.S. at 390–91, 109 S.Ct. at 1206 ("That a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, where the offi-

cers shortcomings may have resulted from factors other than a faulty training program.")

I come then to the averments of the proposed amended complaint which are said sufficiently to allege a policy or practice of deliberate indifference to plaintiffs' constitutional rights.

First, plaintiffs allege and incorporate by reference three reports concerning the operation of the TAPD. The first of these was a special report on the feasibility of merging the NYPD with the TAPD. It was prepared for Mayor Koch by the City's then Criminal Justice Coordinator Kenneth Conboy, now a judge of this Court.

The second study was occasioned by the death of Michael Stewart, a graffiti painter who died while in TAPD custody. Harold Tyler, a former judge of this Court, was appointed special counsel to investigate that incident. He made his report in January 1987.

Third, in July 1988 the Metropolitan Transportation Administration commissioned a study of the TAPD by the St. Germain Group, Inc. of Boston. "This study was conducted in direct response to widespread allegations made public in 1987 that a number of Transit Police officers assigned to Decoy Patrol Units were making scores of illegal arrests." Proposed amended complaint at ¶ 39.

In addition to these three reports, the proposed amended complaint refers at ¶¶ 41–54 to a number of newspaper reports and court decisions charging or finding that TAPD officers had conducted illegal arrests under a variety of circumstances. These incidents run from 1976 to 1989.

As to the three reports, it is useful to consider them in the context of their admissibility at trial, since if the reports would be inadmissible under the rules of evidence they cannot form a legitimate basis for inferring municipal liability at the pleading stage.

The admissibility of written reports criticizing government agencies involves the considerations of relevance, see Rules 401–403, F.R.Evid., and hearsay, Rule 803(8).

See generally Gentile v. County of Suffolk, 129 F.R.D. 435 (E.D.N.Y.1990) (Weinstein, J.).

The Second Circuit's decision in Janetka v. Dabe, 892 F.2d 187 (2d Cir.1989), turned upon relevance. Plaintiff in that civil rights action against a police officer and the county for malicious prosecution sought to support his claim of the county's deliberate indifference to police misconduct with an investigative report prepared by the State Investigation Commission. The report broadly criticized county police conduct, the county's supervision, and its failure to investigate, discipline or prosecute instances of official misconduct. The trial judge held that the report was inadmissible. The Second Circuit affirmed, stating: "Absent a showing that Dabe [the individual officer] knew of and relied upon the County's policy or practice, the report was not relevant to the case." 892 F.2d at 191.

In Gentile v. County of Suffolk, supra, Judge Weinstein dealt with the same SIC report in another civil rights action against Suffolk County police officers and the county. He held after a post-verdict hearing into the report's trustworthiness that the report was relevant because it tended to support plaintiffs' claim "that there was a county policy or custom of failing to take proper action in investigating and, where warranted, in disciplining or prosecuting instances of official misconduct," 129 F.R.D. at 445, and was a trustworthy public report under Rule 803(8). Judge Weinstein dealt briskly with the Second Circuit's decision in Janetka: "If anything is to be derived from Janetka, it is that evidentiary determinations made by district courts are reviewed under an extremely deferential standard." 129 F.R.D. at 445.

I think the issue of relevance of such reports is central. The issue arises from the Supreme Court's requirement in cases such as City of Canton, Ohio v. Harris that deficiencies in a training program "must be closely related to the ultimate injury." Id., 489 U.S. at 391, 109 S.Ct. at 1206. That requisite causal connection is reflected by the Second Circuit's opinion in Janetka quoting with approval Anderson

*v. City of New York,* 657 F.Supp. 1571, 1575–76 (S.D.N.Y.1987) (plaintiff "must link the behavior in question to the policy of failure to discipline—for example, the officer must have known of the policy at the time he allegedly committed the civil rights violations"). 892 F.2d at 191.

The hearsay question turns upon the nature of the report. Such reports are offered for their truth. They must accordingly fall within an exception to the hearsay rule. The exception applicable to such documents is Rule 803(8)(C), which applies in civil actions to "records, reports, statements, or data compilations in any form, of public offices or agencies ...," where those reports contain "factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness."

▇ The trustworthiness of a public report and its consequent admissibility turns upon the timeliness of the investigation; the special skill or experience of the officials conducting the investigation; the procedures covering any hearings; the existence of motivation problems on the part of either the investigators or other sources of information; and the finality of the findings made in the report. *Gentile v. County of Suffolk, supra,* at 450; *Anderson v. City of New York, supra,* at 1578.

▇ In the case at bar, the St. Germain Group report is inadmissible because it fails to satisfy the hearsay rule. The St. Germain Group, Inc. describes itself in the preamble to the report as "a small Boston-based management analysis group focusing on the study of complex police and public sector organizations." The proposed amended complaint does not quote that preamble, but the pleading incorporates the

report by reference, and defendants attach the entire report to their motion papers.[1] While this entity's services were requested by a public office or agency, the St. Germain Group is not a public office or agency itself, nor do its factual findings result "from an investigation made pursuant to authority granted by law."

▇ Arguably the two earlier reports of soon-to-be Judge Conboy and former Judge Tyler fall within Rule 803(8), although Judge Tyler had returned to private practice at the time of his report and so the proposition is doubtful. But the problem of relevance remains. The Conboy report resulted from former Mayor Koch's direction that "a feasibility study be undertaken with respect to formal merger of the City, Transit and Housing Police Forces of New York City." The proposed amended complaint at ¶¶ 19–20 quotes statements from the report that NYPD officers received twice as much in-service training as TAPD officers; that the NYPD had a legal bureau able to provide a wide range of services including on-going legal training, whereas the TAPD had no legal bureau and relied upon the counsel to the TA for general legal advice; and that the TAPD lacked a "clear line of authority," with "sergeants and lieutenants in uniform ... not routinely observable in the system."

While I have no reason to doubt the objectivity of then Commissioner Conboy's report,[2] the charge laid upon him by Mayor Koch and the observations he makes to support his recommendation of merger fall far short of proving directly or by inference a municipal policy or practice of deliberate indifference to unconstitutional arrests by TAPD officers.

As for Judge Tyler's report on the Michael Stewart incident, the incident was

---

1. If the complaint does not sufficiently incorporate the St. Germain report to allow defendants' submission of the entire document on a motion to dismiss, *see Cosmas v. Hassett,* 886 F.2d 8, 13 (2d Cir.1989) (where complaint "merely discussed ... documents and presented quotations from them" incorporation by reference for Rule 12(b)(6) purposes did not occur), the analysis remains the same, since plaintiffs do not allege that the St. Germain Group was a public body.

2. Thus I do not disregard the Conboy report as lacking in trustworthiness under Rule 803(8)(C). *Cf. Anderson v. City of New York, supra,* where Judge Leisure declined to consider the report of a sub-committee of the Congress based upon hearings into NYPD misconduct. ("The report lacks the ordinary indicias of reliability, is not based on the personal knowledge of the reporter, and contains the testimony of interested parties, not experts.") 657 F.Supp. at 1579–80.

dreadful and the report criticized TAPD officers at a number of levels. Indeed, the proposed amended complaint alleges that the TAPD Chief resigned following the report and was replaced by the present Chief, defendant del Castillo. The fact remains, however, that Judge Tyler's brief was to inquire into one incident only. He did that, no more, no less.

■ As for the series of prior incidents plaintiffs derive from reported cases or newspaper articles, they cover a period of 15 years, in some cases refer only to accusations not findings, and arise out of a series of differing factual backgrounds. They are not sufficient to establish the basis for inferring that the TA defendants had a policy or practice of encouraging or condoning arrest conduct of the sort alleged in this complaint. As many as 20 prior incidents of constitutional violations through police misconduct are insufficient in law to infer municipal liability under § 1983, in the absence of a "common thread running through" the incidents demonstrating "a deliberate plan by the *named* defendants" to violate constitutional rights in a particular manner (emphasis in original). *Rizzo v. Goode*, 423 U.S. 362, 375, 96 S.Ct. 598, 606, 46 L.Ed.2d 561 (1976). Plaintiffs say *Rizzo* is inapposite because it antedates *Monell* and considered only equitable relief. This does not distinguish *Rizzo's* rationale, as Judge Weinstein recognized in citing the case for the proposition that: "Civil rights plaintiffs often have a difficult task establishing both the existence of a municipal practice or policy and the 'causation' element of the claim." *Gentile v. County of Suffolk, supra,* at 444. That difficulty is grounded in public policy. In *Smith v. Ambrogio*, 456 F.Supp. 1130, 1137 (D.Conn.1978), District Judge Newman (as he then was) wrote:

> The standard for municipal liability predicated on inaction of senior personnel must be frankly acknowledged as difficult to meet. A claim of this sort should not be initiated unless there is a suffi-

cient factual basis to justify the extensive litigation that such a claim entails. The typical § 1983 suit against a police officer for his allegedly unconstitutional action generally involves a single episode. Discovery and trial are entirely manageable. But a claim of municipal liability based on an alleged policy reflected by a pattern of prior episodes will inevitably risk placing an entire police department on trial. Sweeping discovery will be sought to unearth episodes in which allegedly similar unconstitutional actions have been taken, and the trial will then require litigation of every episode occurring in the community that counsel believes can be shown to involve a similar constitutional violation. Even if a trial of that scope is warranted by a complaint that does allege overt acts with requisite particularity, *see Lewis v. Kugler, supra,* 446 F.2d at 1345 (complaint contained "detailed factual recitations relating to 25 separate incidents"), neither federal courts nor a municipality should be burdened with such an action unless a detailed pleading is presented.[3]

In similar vein the district court in *Ekergren v. City of Chicago*, 538 F.Supp. 770, 773 (N.D.Ill.1982), said:

> Initially, the court notes that the number of suits filed by itself is insufficient, as a certain proportion of those suits may be groundless and in others the defendants may prevail. The primary defect with plaintiff's allegations, however, is a lack of specificity; the number of civil rights cases is not relevant, only the number of civil rights cases against Chicago policemen involving unlawful arrests, searches and seizures.

> Furthermore, because the area of arrests, searches and seizures includes an almost limitless range of factual situations, the court is of the opinion that even if plaintiff alleged in detail the number of illegal arrest or search and seizure cases in which the plaintiffs prevailed, this would not establish a pattern.

---

**3.** *Lewis v. Kugler,* 446 F.2d 1343 (3rd Cir.1971), referred to by Judge Newman in *Smith,* involved 25 separate indictments of precisely the same sort of halts and searches by New Jersey highway and toll officers.

No common thread emerges from the facts alleged in the proposed amended complaint. That is true of all three written reports, even if, contrary to the rules of evidence, I were to consider the contents of the St. Germain report. The Conboy report does not deal with specific instances at all, being limited to a stated preference for merger of the two police departments. The Tyler report deals solely with the Michael Stewart incident. The St. Germain report was prompted by a criticized use of decoys and resulting illegal arrests in the subway system itself, a fact pattern quite different from the incidents alleged at bar.

If the Court were to conclude that references to these three reports, interspersed with citations to newspaper articles and court decisions culled from a 15–year review of the activities of a large municipal police department, were sufficient to plead an inference of municipal policy or practice condoning unconstitutional arrests, there is no future single incident which would not be held to state a viable § 1983 claim against the TA, TAPD and its chief. I cannot accept that proposition.

I deny plaintiffs' motion to amend their complaint so as to preserve a § 1983 claim against the TA, TAPD and del Castillo. The motion is timely, and these defendants are not prejudiced by any delay, but the pleading is insufficient in law and accordingly amendment may be denied on the ground of futility.

Leave to amend the complaint in other respects is granted. Plaintiffs may file and serve an amended pleading consistent with this Opinion within twenty (20) days of the date of this Opinion. The motion of defendants Transit Authority, Transit Authority Police Department, and del Castillo to dismiss the complaint is granted. The case continues against defendants Lopez and Wheeler and the remaining defendants, who have made no motions.

It is SO ORDERED.