941 F.2d 119
 20 Fed.R.Serv.3d 712
 Alfred RICCIUTI and Daniel Ricciuti, Plaintiffs-Appellants,
v.
N.Y.C. TRANSIT AUTHORITY, N.Y.C. Transit Police Dept.,
N.Y.C. Transit Police Chief Vincent Del Castillo, N.Y.C.
T.A. Police Lieutenant R.L. Wheeler, N.Y.C. T.A. Police
Officer Henry Lopez, the City of New York, N.Y.C. Dept. of
Corrections, Corrections Commissioner Richard Koehler,
N.Y.C. Corrections Officer Harlice Watson, Defendants,
N.Y.C. Transit Authority, N.Y.C. Transit Police Dept.,
N.Y.C. Transit Police Chief Vincent Del Castillo,
Defendants-Appellees.
 No. 1558, Docket 91-7138.
 United States Court of Appeals,
Second Circuit.
 Argued May 23, 1991.
Decided Aug. 5, 1991.
 
 Kathleen M. O'Connell (Murphy & O'Connell, New York City, on the brief), for plaintiffs-appellants.
 Steve S. Efron, New York City (Albert C. Cosenza, Larry Hecht, Brooklyn, N.Y., on the brief), for defendants-appellees.
 Before KEARSE, MAHONEY, and SNEED,* Circuit Judges.
 KEARSE, Circuit Judge:
 
 
 1
 Plaintiffs Alfred and Daniel Ricciuti appeal from a final judgment entered pursuant to Fed.R.Civ.P. 54(b) in the United States District Court for the Southern District of New York, Charles S. Haight, Jr., Judge, dismissing their complaint against defendants-appellees N.Y.C. Transit Authority ("TA"), N.Y.C. Transit Police Dept. ("TAPD"), and N.Y.C. Transit Police Chief Vincent del Castillo for damages principally under 42 U.S.C. § 1983 (1988) in connection with plaintiffs' arrest and treatment by defendants R.L. Wheeler, Henry Lopez, and Harlice Watson. The district court dismissed the complaint against appellees for failure to state a claim, ruling that it did not adequately plead facts showing that any violation of plaintiffs' civil rights resulted from a municipal policy. The court denied plaintiffs leave to amend, ruling that alleged past incidents were insufficient to establish the basis for inferring the existence of such a policy and noting that certain reports, incorporated by reference into the proposed amended complaint, would be inadmissible at a trial. On appeal, plaintiffs contend that the court erred in not permitting them to file their proposed amended complaint against appellees and in dismissing their state-law claims against appellees. We agree and vacate the judgment.
 
 I. BACKGROUND
 A. The Events According to the Complaints
 
 2
 According to the initial and proposed complaints, Alfred Ricciuti ("Alfred") and his nephew Daniel Ricciuti ("Daniel") are New Jersey residents who, on the afternoon of April 30, 1989, went to a ball game at Yankee Stadium in the Bronx, New York. As the Ricciutis walked along the crowded street after leaving the stadium, Watson, a New York City Corrections Officer who was not in uniform, and Alfred accidentally bumped into one another. Plaintiffs stepped aside to allow Watson to pass, which he did. A few steps later, Watson ran back and proceeded to assault Alfred, striking him in the face, knocking him to the ground, and menacing him with a handgun. After this beating, Watson departed, leaving Alfred dazed, and Daniel went to retrieve plaintiffs' car. Watson soon returned with Lopez, a TA Police Officer. Lopez, without inquiry, threw Alfred against a wall, searched him, and arrested him. Watson and Lopez took Alfred to a nearby TA police station, followed by Daniel. During that trip, Lopez turned and kicked Daniel, without provocation, accusing him of following too closely.
 
 
 3
 At the police station, where Wheeler, a TA Police Lieutenant, was in charge, Alfred attempted to file a complaint for assault against Watson. Wheeler refused to allow him to do so. While Daniel was waiting, Watson threw him against a wall in the station and placed him under arrest as well. Wheeler and Lopez witnessed Watson's conduct and did nothing to impede, correct, or criticize it. Both plaintiffs were charged with felonious assault in the second degree and the misdemeanor of aggravated harassment. They were jailed overnight until their arraignments on May 1. Thereafter, all of the charges against them were dismissed by the court.
 
 
 4
 B. The Motions To Dismiss and To Amend, and the Decision Below
 
 
 5
 In April 1990, plaintiffs commenced the present action, asserting claims under 42 U.S.C. §§ 1981, 1983, 1985, and 1986 (1988), various provisions of the Constitution, and state law, charging, inter alia, that they were the victims of assault, that their arrests were without provocation or probable cause, and that they were denied equal protection by the refusals of Wheeler and Lopez to process plaintiffs' charges against Watson. They alleged that appellees TA, TAPD, and del Castillo had failed adequately to train, supervise, control, or discipline Lopez and Wheeler.
 
 
 6
 To the extent pertinent here, TA, TAPD, and del Castillo promptly moved to dismiss the complaint for failure to state claims against them on which relief can be granted, arguing principally that the complaint failed to allege any facts to support the assertion that the conduct complained of was the result of a government policy or practice. In opposition to appellees' motion, plaintiffs cross-moved for leave to amend their complaint and submitted a proposed amended complaint ("amended complaint" or "AC") designed to meet appellees' challenge.
 
 
 7
 The amended complaint summarized three reports relating to the arrest practices of TA police. It alleged that in a 1985 report evaluating a possible merger between TAPD and the New York City Police Department ("1985 report"), "both the general and specialized legal training offered to Transit Police were found inadequate," TAPD arrests "were said to be vulnerable to legal attack and routinely 'trivialized by prosecutors and judges,' " and TAPD was found to have established no clear line of authority with respect to discipline. (AC p 36.) The amended complaint alleged that a 1987 report dealing with the well-publicized death of one Michael Stewart in TAPD custody ("1987 report") faulted TAPD's apprehension and investigative procedures in connection with that case. It alleged that a 1988 report studying illegal arrests by transit officers ("1988 report") found that "it was 'no secret that the current training in the N.Y.C. Police Academy has serious shortcomings as a means of preparing officers for subway policing.' The report also said that 'Managers and supervisors in the TAPD are in need of specially tailored training programs focusing on police operations within the context of the transit system.' " (AC p 39.)
 
 
 8
 In addition, the amended complaint described a dozen or more instances of alleged, conceded, or adjudicated improper arrests by TA officers from 1975 to 1989. The nine cited instances in the period 1984 to 1989 included two court dismissals of criminal charges initiated by TAPD; the indictment of one TA officer on several counts of assault and harassment in connection with his false arrest of a passenger; several civil actions against TA, including a class action, for false arrest or malicious prosecution; and a 1987 acknowledgement by TAPD's Internal Affairs Division that between 1983 and 1984 several TA police officers were known to be making bad arrests but that nothing was done about it for some time. Plaintiffs alleged that these reports and instances were indicative of inadequacy of the training and supervision of TA patrolmen, and that appellees were aware of the deficiencies and were deliberately indifferent to the need to correct them.
 
 
 9
 In a Memorandum Opinion and Order dated December 13, 1990, 754 F.Supp. 980 ("Decision"), the district court granted appellees' motion to dismiss and denied plaintiffs' motion to file their amended complaint. With regard to the reports cited by plaintiffs, the court stated that "it is useful to consider them in the context of their admissibility at trial, since if the reports would be inadmissible under the rules of evidence they cannot f[or]m a legitimate basis for inferring municipal liability at the pleading stage." Id. at 984. The court found that the 1988 report was irrelevant because the illegal TAPD practice it dealt with was not the type of conduct at issue here, and that this report would also be inadmissible hearsay because it was a private rather than a government report, see Fed.R.Evid. 803(8)(C). It concluded that the 1985 and 1987 reports, though arguably not excludable under the hearsay rule, would be excludable on grounds of relevance. It found that the 1987 report was not relevant because it inquired only into the Michael Stewart incident and because that incident preceded del Castillo's appointment as TAPD chief. It found that the observations in the 1985 report, which did not refer to specific instances of arrest practices, "fall far short of proving directly or by inference a municipal policy or practice of deliberate indifference to unconstitutional arrests by TAPD officers." Decision at 985.
 
 
 10
 The court also found that the amended complaint was not aided by its description of prior TAPD incidents:
 
 
 11
 As for the series of prior incidents plaintiffs derive from reported cases or newspaper articles, they cover a period of 15 years, in some cases refer only to accusations not findings, and arise out of a series of differing factual backgrounds. They are not sufficient to establish the basis for inferring that the TA defendants had a policy or practice of encouraging or condoning arrest conduct of the sort alleged in this complaint.
 
 
 12
 Id. at 986. With respect to both the individual incidents and the cited reports, the court stated that "[n]o common thread emerges from the facts alleged in the proposed amended complaint," id. at 987, and it concluded that
 
 
 13
 [i]f the Court were to conclude that references to these three reports, interspersed with citations to newspaper articles and court decisions culled from a 15-year review of the activities of a large municipal police department, were sufficient to plead an inference of municipal policy or practice condoning unconstitutional arrests, there is no future single incident which would not be held to state a viable § 1983 claim against the TA, TAPD and its chief. I cannot accept that proposition.
 
 
 14
 Decision at 987.
 
 
 15
 Accordingly, the court declined to permit plaintiffs to file their amended § 1983 claims on grounds of "futility." Id. The court did not discuss plaintiffs' state-law claims. It ordered the entry of a final judgment pursuant to Rule 54(b) dismissing the complaint against appellees. This appeal followed.
 
 II. DISCUSSION
 
 16
 On appeal, plaintiffs contend that the district court erred (1) in dismissing their § 1983 claims against appellees for failure of the amended complaint to adequately plead a municipal policy of lack of training and supervision revealing a deliberate indifference to constitutional rights, (2) in concluding that the critical reports were inadmissible, and (3) in dismissing their state-law claims against appellees. For the reasons below, we agree with the first and third contentions, and need not decide the second.
 
 A. The § 1983 Claims
 
 17
 A municipality and its supervisory officials may not be held liable in a § 1983 action for the conduct of a lower-echelon employee solely on the basis of respondeat superior. Monell v. Department of Social Services, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). In order to establish the liability of such defendants in an action under § 1983 for unconstitutional acts by such employees, a plaintiff must show that the violation of his constitutional rights resulted from a municipal custom or policy. See, e.g., Pembaur v. City of Cincinnati, 475 U.S. 469, 478-79, 106 S.Ct. 1292, 1297-98, 89 L.Ed.2d 452 (1986); City of Oklahoma City v. Tuttle, 471 U.S. 808, 818, 105 S.Ct. 2427, 2433, 85 L.Ed.2d 791 (1985); Monell v. Department of Social Services, 436 U.S. at 690, 694, 98 S.Ct. at 2035, 2037; Fiacco v. City of Rensselaer, 783 F.2d 319, 326 (2d Cir.1986); Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir.1985), cert. denied, 480 U.S. 916, 107 S.Ct. 1369, 94 L.Ed.2d 685 (1987); Turpin v. Mailet, 619 F.2d 196 (2d Cir.), cert. denied, 449 U.S. 1016, 101 S.Ct. 577, 66 L.Ed.2d 475 (1980). Though this does not mean that the plaintiff must show that the municipality had an explicitly stated rule or regulation, see Villante v. Department of Corrections, 786 F.2d 516, 519 (2d Cir.1986), a single incident alleged in a complaint, especially if it involved only actors below the policy-making level, does not suffice to show a municipal policy, see, e.g., City of Canton v. Harris, 489 U.S. 378, 387, 109 S.Ct. 1197, 1203, 103 L.Ed.2d 412 (1989); Fiacco v. City of Rensselaer, 783 F.2d at 328. The inference that a policy existed may, however, be drawn from circumstantial proof, such as evidence that the municipality so failed to train its employees as to display a deliberate indifference to the constitutional rights of those within its jurisdiction, see, e.g., City of Canton v. Harris, 489 U.S. at 388-92, 109 S.Ct. at 1204-07, or evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges that police officers had used excessive force in violation of the complainants' civil rights, see, e.g., Fiacco v. City of Rensselaer, 783 F.2d at 328. Though we do not address the merits of the district court's evidentiary rulings in the present case, we note in passing that the reports cited by plaintiffs would not be hearsay if they were offered for the purpose of proving something other than the truth of the matters stated therein, such as whether appellees had notice.
 
 
 18
 As a matter of procedure, when a complaint is dismissed pursuant to Rule 12(b)(6) and the plaintiff requests permission to file an amended complaint, that request should ordinarily be granted. See, e.g., Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991); Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988). Rule 15(a) provides that leave to amend "shall be freely given when justice so requires," Fed.R.Civ.P. 15(a); see 3 Moore's Federal Practice p 15.08, at 15-65 (2d ed. 1991), and it is rare that such leave should be denied, see Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962), especially when there has been no prior amendment.
 
 
 19
 When the plaintiff has submitted a proposed amended complaint, the district judge may review that pleading for adequacy and need not allow its filing if it does not state a claim upon which relief can be granted. The adequacy of the proposed amended complaint, however, is to be judged by the same standards as those governing the adequacy of a filed pleading. Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2), and is designed to permit the defendant to have a fair understanding of what the plaintiff is complaining about and to know whether there is a legal basis for recovery, see, e.g., 2A Moore's Federal Practice p 8.13, at 8-73 (2d ed. 1991). Thus, the court should not dismiss the complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957), and it should not deny leave to file a proposed amended complaint unless that same rigorous standard is met. This principle should be applied with particular strictness when the plaintiff seeks to file an amended complaint charging a violation of his civil rights, see generally Branum v. Clark, 927 F.2d at 705; Owens v. Haas, 601 F.2d 1242, 1247 (2d Cir.), cert. denied, 444 U.S. 980, 100 S.Ct. 483, 62 L.Ed.2d 407 (1979); Escalera v. New York City Housing Authority, 425 F.2d 853, 857 (2d Cir.), cert. denied, 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).
 
 
 20
 The fact that a pleading contains references to documents that may eventually be ruled inadmissible in evidence is not a proper basis for dismissal pursuant to Rule 12(b)(6). Under Rule 8(a), a plaintiff is not required to prove his case at the pleading stage. Indeed, "[t]he pleading of evidence should be avoided." 2A Moore's Federal Practice p 8.13, at 8-68; see, e.g., Geisler v. Petrocelli, 616 F.2d 636, 639-40 (2d Cir.1980). Thus, though admissibility of a document would properly be considered in the context of a motion for summary judgment in opposition to which the plaintiff has purported to adduce the proof on which he would rely at trial, evidentiary flaws in documents described in a pleading are not a basis for dismissal for failure to state a claim.
 
 
 21
 The adequacy of a § 1983 pleading must be assessed with all of these substantive and procedural principles in mind. What is a properly "short and plain" pleading depends, of course, on the circumstances of the case and the nature of the claim, and our prior cases suggest that an allegation of municipal policy or custom would be insufficient if wholly conclusory. See, e.g., Batista v. Rodriguez, 702 F.2d 393, 395 n. 1, 396-97 (2d Cir.1983); id. at 397 ("complaint arguably satisfies the requirement that it allege ... the existence of an official policy or custom, by alleging that the [municipal defendant] repeatedly condoned and even rewarded police conduct that had been adjudicated to be in violation of civil rights"); Owens v. Haas, 601 F.2d at 1246 (reversing dismissal on the pleadings and remanding to permit plaintiff limited discovery in order to amend complaint to allege municipal policy). We need not attempt here to define precisely how abbreviated an allegation of municipal policy or custom would pass muster, however, for the allegations of the proposed amended complaint, summarized in Part I.B. above, were more than sufficient. Whether or not the cited reports and incidents would eventually be admissible in evidence, the proposed pleading alleged circumstances that precluded any conclusion that it was "beyond doubt" that plaintiffs would be unable to prove any set of facts in support of their claims of deliberate indifference to the need for training and supervision of employees such as Wheeler and Lopez, with respect to the civil rights of persons such as these plaintiffs, so as to permit the inference of a municipal policy.
 
 B. The State-Law Claims
 
 22
 In describing the complaint, the district court referred to plaintiffs' state-law claims as "pendent." Decision at 3. When it dismissed plaintiffs' § 1983 claims against appellees, it dismissed the state-law claims without discussion, apparently believing that it had no independent jurisdiction over the latter. In fact, however, the complaint and amended complaint alleged that plaintiffs were citizens of New Jersey, that all of the defendants were citizens of New York, and that jurisdiction was premised on diversity of citizenship. Accordingly, the dismissal of the state-law claims for lack of jurisdiction was improper.
 
 CONCLUSION
 
 23
 For the foregoing reasons, we vacate the judgment of the district court and remand for further proceedings not inconsistent with this opinion. Costs to plaintiffs.
 
 
 
 *
 Honorable Joseph T. Sneed, of the United States Court of Appeals for the Ninth Circuit, sitting by designation