Manuel **RODRIGUEZ**, Plaintiff,

v.

The **CITY OF NEW YORK**; Commissioner of Police Raymond Kelly, Individually and as the Police Commissioner of the City of New York; Police Officer Christopher Grenier, Badge No. 30355, Individually and as a Police Officer; Police Officer Jose Toribio, Badge No. 10268, Individually and as a Police Officer; Police Officer Robert Greenleaf, Badge No. 30701 (Now Detective Under Badge 808), Individually and as a Police Officer; and Police Officers "John Doe" 1 Through 4, Individually and as Police Officers; New York County District Attorney Robert M. Morgenthau, Individually and as the District Attorney of New York County;

---

302

and Assistant District Attorney Shirley Irick, Individually and as an Assistant District Attorney, and Assistant District Attorney "John Doe", Individually and as an Assistant District Attorney, Defendants.

No. 09 Civ. 3642(JSR).

United States District Court, S.D. New York.

Sept. 2, 2009.

Dominick Peter Revellino, Linda M. Cronin, Rocco G. Avallone, Cronin & Byczek, LLP, Lake Success, NY, for Plaintiff.

Sumit Sud, New York City Law Department, Patricia Jean Bailey, Susan C. Roque, New York County District Attorney's Office, New York, NY, for Defendants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

The instant action arises out of plaintiff's arrest on April 12, 2006 and subsequent prosecution for criminal possession of a concealed weapon, which was ultimately dismissed. Plaintiff brought this action in April 2009 against defendants, asserting claims for relief under federal and state law for violations of constitutional rights, conspiracy, false arrest, malicious prosecution, and failure to train and supervise. Two groups of defendants filed separate motions: The City of New York, Police Commissioner Kelly, Police Officer Christopher Grenier, Police Officer Jose Toribio, Police Officer Robert Greenleaf, and Police Officers "John Doe" 1 through 4 (collec-

tively, the "City Defendants") brought (i) a motion to abstain pursuant to the *Colorado River* abstention doctrine or stay the proceedings in light of a pending state court action[1] and (ii) a motion to dismiss as time barred several counts against defendant Police Officers Jose Toribio and Robert Greenleaf. District Attorney Robert M. Morgenthau, Assistant District Attorney Shirley Irick, and Assistant District Attorney "John Doe" (collectively, the "DA Defendants") brought a motion to dismiss all claims against them.

On August 17, 2009, the Court issued an Order denying the City Defendants' motion to abstain or stay, granting the City Defendants' motion to dismiss, granting the DA Defendants' motion to the extent it sought dismissal of the entirety of Counts 1, 4, and 6 against the DA Defendants and such part of Count 2 as concerned malicious prosecution against the DA Defendants, and reserving judgment on the remaining parts of the DA Defendants' motion. *See* Order, 8/17/09. This Memorandum Order addresses the remaining portions of the DA Defendants' motion to dismiss—Count 2 as it concerns false arrest, and Counts 3, 5, and 7 in their entirety—and grants the motion.

For the purposes of this motion, the Court takes as true the allegations in plaintiff's Amended Complaint ("Am. Compl."). Plaintiff, a "dark-skinned Hispanic male," Am. Compl. ¶ 8, is a "duly elected Pennsylvania State Constable." *Id.* ¶ 21. On or about April 12, 2006, plaintiff was sitting in his parked vehicle, bearing Pennsylvania license plates, near 1250 Fifth Avenue, New York, New York, when defendants confronted and detained him, allegedly without probable cause. *Id.* ¶ 25. Defendants asked him to identify himself, which he did both verbally and with written identification. *Id.* ¶ 27. Upon plaintiff's identifying himself as a Pennsylvania State Constable, defendants asked plaintiff if he were armed, *id.* ¶ 28, and when he answered affirmatively, they asked him to hand over his weapon, which he did. *Id.* ¶¶ 29–30. Plaintiff has a valid permit for the firearm. *Id.* ¶ 23. After additional questioning, defendants instructed him to drive his vehicle to the 23rd Precinct stationhouse, with an officer accompanying him in the front and his civilian witness in the back. *Id.* ¶ 31.

Upon arrival at the stationhouse, plaintiff was placed under arrest, detained, placed in a holding cell, and finally arraigned twenty-four hours later. *Id.* ¶ 33. At the stationhouse, defendants improperly identified him as "Arthur Rodriguez," a nickname or alias he has never used, *id.* ¶ 40, and failed to investigate his true identity despite having his written documentation identifying him as "Manuel Rodriguez." *Id.* ¶ 38–89. Defendant Assistant District Attorney Shirley Irick assisted the NYPD defendants in their investigation by

---

**1.** On July 3, 2007, plaintiff filed a complaint in New York State Supreme Court against New York City, Police Commissioner Raymond Kelly, Police Officer Christopher Greiner, Officers from the 23rd Precinct stationhouse, New York County District Attorney and Assistant District Attorney Shirley Irick. Ex. B to Declaration of Rocco G. Avallone, dated 7/20/09. The state court complaint alleged causes of action for false arrest, malicious prosecution, violation of due process, conspiracy to violate civil rights, deliberate neglect, and malicious abuse of process. *Id.;*

Defendants' Memorandum of Law in Support of Their Motion to Dismiss Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("City Def. Mem.") at 3. On August 10, 2007, the Office of the Corporation Counsel filed an answer on behalf of the City, along with discovery demands. *Id.* On October 17, 2007, DA Defendants filed a motion seeking to be dismissed from the case for improper service, which the Honorable Karen Smith granted on October 31, 2007. City Def. Mem. at 3–4.

contacting the Honorable David Leh, who was, according to plaintiff, the Pennsylvania judge who signed the warrant that plaintiff was avowedly attempting to enforce. *Id.* ¶ 45. On or about April 12, 2006, plaintiff's firearm, shield and identification were confiscated, thus depriving him of protection and preventing him from performing his job duties. *Id.* ¶ 47. Thereafter, on June 2, 2006, despite the information obtained in this investigation, the New York County District Attorney's Office indicted Plaintiff for Criminal Possession of a Weapon in the Third Degree, in violation of NYS Penal Law § 265.02(4). *Id.* ¶ 37, 48.

Plaintiff further alleges that ADA Irick was informed of plaintiff's status as a constable yet proceeded with the indictment, *id.* ¶ 49, and she and other defendants presented evidence regarding his firearm permit to the grand jury but willfully failed to inform the grand jury about his status as a Pennsylvania State Constable and about the Law Enforcement Officers Safety Act of 2004 ("LEOSA").[2] *Id.* ¶ 50. The Complaint further asserts that the defendants were ignorant of or knowingly violated LEOSA. *Id.* ¶¶ 35, 46, 55.

After holding a hearing on October 20, 2006, the Honorable Ronald A. Zweibel of New York County Supreme Court dismissed the criminal charges on November 3, 2006 on the ground that P.L. § 265.02 does not apply to the possession of a firearm by a "sworn peace officer of another

state while conducting official business within the State of New York." *Id.* ¶¶ 56–57; *see also* Exhibit B of Linda M. Cronin Declaration, dated July 20, 2009.

■ The Court turns first to plaintiff's claims against the DA Defendants for false arrest under federal and New York State law (Counts 2 and 5, respectively). The elements of false arrest under federal and New York law are substantially the same. *Savino v. City of New York,* 331 F.3d 63, 75 (2d Cir.2003); *Weyant v. Okst,* 101 F.3d 845, 852 (2d Cir.1996). To state a claim for false arrest, a plaintiff must allege that "(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged." *Savino,* 331 F.3d at 75 (internal citation omitted).

■ With respect to the first element, plaintiff has failed to allege that District Attorney Morgenthau ("DA Morgenthau") was personally involved in plaintiff's arrest nor has he included in his pleadings any facts that would given rise to an inference of direct involvement. Without allegations of direct involvement, a false arrest claim for damages under Section 1983. *See Farrell v. Burke,* 449 F.3d 470, 484 (2d Cir. 2006) (federal law); *Wright v. Smith,* 21 F.3d 496, 501 (2d Cir.1994) (same); *Du Chateau v. Metro–North Commuter,* 253 A.D.2d 128, 132, 688 N.Y.S.2d 12 (1st Dep't

---

**2.** LEOSA establishes that "[n]otwithstanding any other provision of the law of any State or any political subdivision thereof, an individual who is a qualified law enforcement officer and who is carrying the identification required by subsection (d) may carry a concealed firearm that has been shipped or transported in interstate or foreign commerce, subject to subsection (b)." 18 U.S.C. § 926B(a). The statute further defines "qualified law enforcement officer" as "an employee of a governmental agency who (1) is au-

thorized by law to engage in or supervise the prevention, detection, investigation, or prosecution of, or the incarceration of any person for, any violation of law, and has statutory powers of arrest; (2) is authorized by the agency to carry a firearm." 18 U.S.C. § 926B(c). LEOSA requires that the identification be "the photographic identification issued by the governmental agency for which the individual is employed as a law enforcement officer." 18 U.S.C. § 926B(d).

1999) (state law). Plaintiff has not alleged that DA Morgenthau "directed" any police officer or ADA Irick to take plaintiff into custody. Nor can the plaintiff predicate liability on a theory of *respondeat superior*, since that theory is unavailable for federal claims under Section 1983 or false arrest claims under New York State law. *See Ying Jing Gan v. City of New York*, 996 F.2d 522, 536 (2d Cir.1993) ("[A] supervisory official cannot be held liable under § 1983 on a theory of respondeat superior."); *Shmueli v. N.Y. City Police Dep't*, 295 A.D.2d 271, 743 N.Y.S.2d 871, 871–72 (1st Dep't 2002) (dismissing state law claims against district attorney "since claims premised on vicarious liability do not lie against the head of a county agency").

In the absence of DA Morgenthau's direct participation in plaintiff's arrest, plaintiff argues DA Morgenthau is still responsible for plaintiff's false arrest for failing to properly train ADA Irick. *See* Am. Compl. ¶¶ 34–44; Plaintiff's Memorandum in Opposition to Defendant Morgenthau and Irick's Motion to Dismiss Plaintiff's Amended Complaint at 19. But this is simply duplicative of plaintiff's separate failure to train claims (Counts 3 and 7), which, as shown below, are deficient. Accordingly, the false arrest claims against DA Morgenthau must be dismissed.

■ Plaintiff's false arrest claims against ADA Irick suffer from a similar weakness. Plaintiff alleges only that ADA Irick assisted the New York City Police Department officers in their investigation of the plaintiff by contacting Judge David Leh, who signed the warrant that the plaintiff was avowedly attempting to enforce when he was detained by the police on April 12, 2006. Plaintiff makes no allegations that the call took place prior to the arrest, that any information acquired during the call was conveyed to the defendant police officers prior to the arrest, or that,

as a result of the call, ADA Irick ordered defendant officers to arrest the plaintiff. Under the current pleading standards, the plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), but plaintiff has not met this threshold burden. Even assuming all facts alleged in the complaint to be true, a plaintiff must "nudg[e][his] claims ... across the line from conceivable to plausible." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S.Ct. 1937, 1951, 173 L.Ed.2d 868 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1950. Thus, plaintiff's factual assertions, even if taken to be true, fail to allege the type of personal involvement that supports a plausible false arrest claim for which the Court could grant relief.

At oral argument plaintiff's counsel suggested that, if given leave to further amend the complaint, plaintiff would assert that if defendant Irick had known about LEOSA, she would have understood the (unspecified) information she had received from Judge Leh and therefore "would not have 'push[ed]' the arrest and prosecution ... forward." *See* transcript, 8/11/09, at 22. But even these facts offer insufficient evidence of proximate involvement by ADA Irick in the arrest to "infer more than the mere possibility of misconduct," *Iqbal*, 129 S.Ct. at 1950, which is not sufficient to sustain the claim. Accordingly, the false arrest claims against ADA Irick must also be dismissed.

■ Turning to plaintiff's *Monell* claim for municipal liability pursuant to Section 1983 (Count 3) and his parallel claim for failure to train and supervise under state law (Count 7), such claims may

only be made against a municipality. But even if further amendment were permitted to substitute the Office of the District Attorney for the DA Defendants as defendant on these claims, plaintiff has failed to plead sufficient factual allegations to survive a motion to dismiss.

Plaintiff asserts in his *Monell* claim that defendants "displayed a deliberate indifference to the constitutional rights to those within the State of the New York," Am. Compl. ¶ 77, and deprived him "of his civil, constitutional and statutory rights as a result of the unlawful and improper police stop due to the practice and policy of racial profiling...." *Id.* ¶ 79. In his failure to train claim, plaintiff similarly alleges that DA Morgenthau failed to properly train and supervise his employees "regarding the stop, detention, investigation and prosecution of individual peace officers from out of state who come into New York State in order to conduct official business and the application of LEOSA ... regarding the proper procedures and investigation when out of state law enforcement personnel with service weapons are encountered." Am. Compl. ¶¶ 107–108. Plaintiff alleges that such failure to train, as in the *Monell* claim, "amounted to deliberate indifference to the constitutional rights of persons such as plaintiff." *Id.* ¶ 109.

■■ Inadequate training "may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons...." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989). "Deliberate indifference," in turn, may be shown by "evidence that the municipality had notice of but repeatedly failed to make any meaningful investigation into charges" that its employees were violating citizens' constitutional rights. *Ricciuti v. N.Y.C. Transit Auth.,* 941 F.2d 119, 123 (2d Cir.1991). To establish that a "municipality's failure to train or supervise constitutes deliberate indifference to the constitutional rights of citizens," *Walker v. City of New York,* 974 F.2d 293, 297 (2d Cir.1992), plaintiff must show (1) that "a policymaker knows 'to a moral certainty' that her employees will confront a given situation"; (2) that "the situation either presents that employee with a difficult choice of the sort that training or supervision will make less difficult or that there is a history of employees mishandling the situation"; and (3) that "the wrong choice by the city employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 297–98.

With respect to the alleged policy of racial profiling, plaintiff's allegations appear to be little more than a recitation of the legal elements, as he does not provide specific facts that link any of the DA Defendants to a policy of racial profiling, much less provide any support for the existence of any such policy other than his assertion that he was subjected to racial profiling under such a policy. Am. Compl. ¶¶ 26, 79. The Court has already granted the DA Defendants' motion to dismiss plaintiff's Section 1981 claim of discriminatory racial profiling in violation of the Fourteenth Amendment, *see* Order, 08/17/09, since plaintiff has failed to adduce any facts that support the DA Defendants' role in any alleged racial profiling. Indeed, plaintiff does not even remotely claim that DA Irick's alleged involvement in the arrest in any way stemmed from a policy of racial profiling, therefore it is hard to see, even if the Amended Complaint is read with the most liberal eye, how the Office of the District Attorney would be responsible for failure to train with respect to racial profiling.

Training with respect to LEOSA could conceivably fall within the province of the Office of the District Attorney. But the

alleged failure to so train is here alleged in only the most conclusory, and legally insufficient, manner. *See Ying Jing Gan*, 996 F.2d at 536 (affirming district court's dismissal of complaint that contained only conclusory and speculative assertions regarding municipal policymaker). Similarly, at oral argument, plaintiff simply reiterated that the District Attorney has a "policy and practice" that constitutes a "failure to train," *see* transcript 8/11/09, at 22, but was unable to adduce any facts to support this conclusory assertion.

■ Moreover, even assuming *arguendo* that a lack of understanding of LEOSA influenced how Irick handled the investigation and subsequent prosecution of the plaintiff, a single instance of government inaction is generally insufficient to establish the existence of a policy of inadequate training, *see City of Oklahoma v. Tuttle*, 471 U.S. 808, 832, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985), unless that single instance was the decision of the municipal policymaker himself, *see Pembaur v. Cincinnati*, 475 U.S. 469, 480, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). Here, plaintiff has not alleged that the decision to investigate the plaintiff and bring criminal charges was made by DA Morgenthau, and thus the single incident at issue in the present action cannot support *Monell* liability.

■ Furthermore, although repeated failure to respond to allegations of misconduct can give rise to municipal liability under Section 1983, *see Gentile v. County of Suffolk*, 926 F.2d 142 (2d Cir.1991), plaintiff has not provided a shred of particularization for the conclusory allegation that DA Morgenthau "repeatedly failed to make any meaningful investigation into charges of constitutional violations by its staff," Am. Compl. ¶ 78. A claim that rests only on conclusory allegations cannot survive a motion to dismiss. *See Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 337 (2d Cir.2006)("Conclusory allegations or legal conclusions . . . will not suffice to [defeat] a motion to dismiss.") (internal citation omitted); *see also Ying Jing Gan*, 996 F.2d at 536 (dismissing *Monell* claim for conclusory allegation directed at municipal policymaker). In the absence of such specifics, the claim must be dismissed.

Nor has plaintiff set forth any facts that demonstrate how DA Morgenthau's supposed failure to train ADA Irick about the LEOSA statute or racial profiling proximately caused the constitutional injury to the plaintiff. One of the requirements for establishing municipal liability is that the plaintiff establish that "[t]he deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 129 (2d Cir.2004) (internal citation omitted). As noted, when the problem was raised at oral argument plaintiff speculated that the DA's failure to train in LEOSA would have prevented plaintiff's arrest, but could offer no specifics. *See* transcript, 8/11/09 at 21.

Finally, it bears noting that, inasmuch as the Section 1981 claim for conspiracy and Section 1983 claim for malicious prosecution against the DA Defendants were previously dismissed, *see* Order, 8/17/09, and plaintiff's false arrest claims against the DA Defendants have now been dismissed, *supra*, plaintiff lacks a predicate cause of action for *Monell* liability.

All the same arguments also doom the plaintiff's state law claim for failure to train, which likewise must be dismissed.

In sum, the remaining part of Count 2 (alleging false arrest) against the DA Defendants, and the entirety of Counts 3, 5, and 7 against the DA Defendants are hereby dismissed with prejudice. The result is that the DA Defendants are now no longer part of this case. The remaining counts against the City Defendants will proceed

according to the current Case Management Plan. Counsel for the remaining parties should also jointly call Chambers by no later than September 10, 2005 to set a summary judgment schedule and a date for a final pre-trial conference.

SO ORDERED.