[688 NYS2d 12]

Daniel Du Chateau, Respondent, v Metro-North Commuter Railroad Company, Appellant, et al., Defendant.

First Department, March 18, 1999

### APPEARANCES OF COUNSEL

*John W. Cobb* of counsel (*Cobb & Cobb,* attorneys), for respondent.

*Lisa J. Hart* of counsel (*Richard K. Bernard,* attorney), for appellant.

### OPINION OF THE COURT

Sullivan, J. P.

On this appeal from the denial of defendant Metro-North Commuter Railroad Company's motion for summary judgment dismissing the complaint, which asserts claims for false imprisonment and malicious prosecution, the essential underlying facts are not in dispute.

On August 11, 1994, plaintiff, a passenger on a Metro-North train, became upset when the conductor, Madeline Romanoski,[1] insisted that he pay his fare notwithstanding his explanation that he had forgotten his monthly pass and that another conductor had, earlier that day, permitted him to ride free of

---

1. Ms. Romanoski claims that she was never served; she has a motion pending to dismiss pursuant to CPLR 3215 (g) (3).

charge. Plaintiff eventually paid the fare but not without referring to Romanoski as a "jerk". According to plaintiff, he asked Romanoski for her name and then bent forward to look at her name tag. In the process, the back of his left hand grazed her right arm. According to Romanoski, after she collected the fare from plaintiff and walked away to collect the next fare, plaintiff "grabbed me roughly by the arm, pulling me back toward him, leaving a red mark on my arm." Romanoski reported the incident to the train engineer, who radioed for police assistance.

After the train stopped at the 125th Street station, Romanoski met Metro-North Police Officers Valentin and Dyer, explaining what had happened. She showed Valentin the red mark on her arm where plaintiff had grabbed her and, at Valentin's request, identified plaintiff as the passenger involved. Valentin spoke privately with plaintiff after he had been escorted from the train. Valentin, then filled out an appearance ticket (summons) and, as is customary, asked Romanoski to sign it since she was the complaining witness. Romanoski did so. Valentin signed in the place designated "Rank/Signature of Complainant."

According to Officer Valentin, who submitted an affidavit in support of Metro-North's motion, he observed the red mark on the arm of Romanoski, who was visibly upset when he questioned her. As Valentin recalls, plaintiff had "admitted to grabbing Ms. Romanoski's arm but claimed that he was trying to turn her around so he could read her name tag." Based on his questioning of both plaintiff and Romanoski, the presence of the red mark on Romanoski's arm and taking into account how upset she was, Valentin determined that he had probable cause to believe that plaintiff had harassed her. Before issuing the summons, he reviewed the Penal Law to confirm the appropriateness of the charge.[2] Plaintiff was acquitted after trial.

■ In denying Metro-North's motion for summary judgment dismissing the complaint, the IAS Court found triable issues of fact as to "whether the conductor properly acted with the scope of her employment in reporting the matter to the police and in causing the arrest." The issue of respondeat superior should never have been reached since, assuming the conductor to have acted within the scope of her authority, she is not, as argued, liable, as a matter of law, for either false arrest or malicious

---

2. Harassment in the second degree, a violation, is committed when, "with intent to harass, annoy or alarm another person", the actor "subjects such other person to physical contact" (Penal Law § 240.26 [1].)

prosecution and, thus, Metro-North's summary judgment motion should have been granted. Plaintiff, as he did before the IAS Court, limits his vicarious liability argument to the actions of Romanoski. As his brief states, "[t]here is no question but that defendant Romanoski—and nobody else but defendant Romanoski—was responsible for the initiation of the prior Criminal Court proceeding".

It is well settled in this State's jurisprudence that a civilian complainant, by merely seeking police assistance or furnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution. (*See, Celnick v Freitag*, 242 AD2d 436, 437 [1st Dept]; *Schiffren v Kramer*, 225 AD2d 757, 758-759 [2d Dept].)

Nor does identifying plaintiff as the perpetrator of a crime, signing the summons or testifying at trial give rise to tort liability. (*See, Collins v Brown*, 129 AD2d 902; *Pugach v Borja*, 175 Misc 2d 683.) As noted in *Eisenkraft v Armstrong* (172 AD2d 484, 486), in words that could well have been written of the instant matter, "The defendant Armstrong merely provided information to the police and there is nothing to indicate that she commenced the proceeding against the plaintiff or that she instigated the arrest [citations omitted]." Here, all that has been shown is that Romanoski reported the incident, identified plaintiff, signed the summons as a complaining witness and testified at the original trial. The decision to arrest and charge plaintiff with harassment was made solely by Officer Valentin. Thus, there is no legally sufficient basis for the imposition of liability (*see, e.g., Cobb v Willis*, 208 AD2d 1155, 1156-1157) against either Romanoski or Metro-North for false arrest or malicious prosecution.

■ Plaintiff's malicious prosecution claim also fails for two other reasons. In support of such a claim, a plaintiff must demonstrate the "(1) the initiation of a proceeding, (2) its termination favorably to plaintiff, (3) lack of probable cause, and (4) malice." (*Colon v City of New York*, 60 NY2d 78, 82.) Plaintiff cannot show that Romanoski "played an active role in the prosecution, such as giving advice and encouragement or importuning the authorities to act." (*Viza v Town of Greece*, 94 AD2d 965, 966.) As in the case of false arrest, " '[t]he mere reporting of a crime to police and giving testimony are insufficient' " to show a defendant's initiation of a criminal proceeding. (*DeFelippo v County of Nassau*, 183 AD2d 695, 696, quoting

132

*Viza v Town of Greece, supra,* at 966.) There is no evidence that Romanoski gave false information or withheld information from Officer Valentin. Thus, as a matter of law, plaintiff has failed to show that Romanoski initiated the prosecution.

Nor can plaintiff show actual malice. To do so, plaintiff had to demonstrate that defendant "commenced the prior criminal proceeding due to a wrong or improper motive, something other than a desire to see the ends of justice served." (*Nardelli v Stamberg,* 44 NY2d 500, 503.) Plaintiff's acquittal was the only evidence proffered to show malice. He argues that malice "can be inferred by the facts and circumstances of what happened and [is] supported by witness testimony." He fails to submit any supporting affidavits from those purported witnesses. Plaintiff merely speculates that malice could be shown through the testimony of witnesses who testified for him at the criminal trial. Of course, such speculation cannot defeat a motion for summary judgment. (*See, Zuckerman v City of New York,* 49 NY2d 557, 563.) Nor since the 1995 commencement of this action has plaintiff sought to depose Romanoski or the police officers. Thus, like plaintiff's false arrest claim, his malicious prosecution claim also fails because he has not proffered any evidence to controvert the factual account of the incident given by Romanoski and Officer Valentin. He cannot show that Romanoski initiated the criminal proceeding or that she acted with actual malice. (*Schiffren v Kramer,* 225 AD2d 757, *supra.*)

■ Plaintiff's false arrest claim is also fatally defective because of his inability to show, in the first instance, evidence that he was confined. (*Parvi v City of Kingston,* 41 NY2d 553, 556.) It is undisputed that plaintiff was never taken into actual custody; any detention was incidental to the issuance of a summons. (*See, Reinhart v Jakubowski,* 239 AD2d 765, 766; *Kramer v Herrera,* 176 AD2d 1241; *Pritchett v State of New York,* 61 AD2d 1110.)

Moreover, even if plaintiff could show a confinement to sustain a false arrest claim, he must also demonstrate, *inter alia,* that "(1) the defendant intended to confine him [and] (2) [that] the plaintiff was conscious of the confinement." (*Broughton v State of New York,* 37 NY2d 451, 456, *cert denied sub nom Schanbarger v Kellogg,* 423 US 929.) It is not enough that the defendant's words or actions caused a police officer to confine him; plaintiff must show that the defendant "directed an officer to take [him] into custody." (*Vernes v Phillips,* 266 NY 298, 301.) Liability will not be imposed where the defendant "merely made his statement, leaving it to the officer to act

or not as he thought proper." (*Supra,* at 301.) Plaintiff has failed to show that Romanoski instigated his arrest or persuaded Officer Valentin to arrest him. (*See, e.g., Carrington v City of New York*, 201 AD2d 525.) As reflected in his affidavit, Officer Valentin acted on his own in issuing the summons and charging plaintiff with harassment.

Accordingly, the order of the Supreme Court, New York County (Richard Lowe, III, J.), entered November 14, 1997, which, as limited by the briefs, denied the motion of Metro-North Commuter Railroad Company for summary judgment dismissing plaintiff's false imprisonment and malicious prosecution causes of action, should be reversed, on the law, without costs or disbursements, and the motion granted.

LERNER, MAZZARELLI and SAXE, JJ., concur.

Order, Supreme Court, New York County, entered November 14, 1997, reversed, on the law, without costs or disbursements, and defendant's motion for summary judgment dismissing plaintiff's false imprisonment and malicious prosecution causes of action granted.