**Martin v Saks & Co. LLC**

2025 NY Slip Op 34756(U)

December 5, 2025

Supreme Court, New York County

Docket Number: Index No. 158089/2017

Judge: Leslie A. Stroth

Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service.

This opinion is uncorrected and not selected for official publication.

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

PRESENT: **HON. LESLIE A. STROTH** PART 12M

*Justice*

------------------------------------------------------------------X

DENISIA MARTIN,

                          Plaintiff,

                - v -

SAKS & COMPANY LLC, et. al.,

                  Defendants.

------------------------------------------------------------------X

| | |
|---|---|
| INDEX NO. | 158089/2017 |
| MOTION DATE | 05/30/2024, 02/20/2025 |
| MOTION SEQ. NO. | 004, 006 |

**DECISION + ORDER ON MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 004) 118, 119, 120, 121, 122, 123, 124, 125, 126, 127, 128, 129, 130, 131, 132, 133, 134, 135, 136, 137, 138, 139, 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 158, 180, 207, 209, 211, 213, 214, 215, 216, 217, 218, 219, 220

were read on this motion to/for             JUDGMENT - SUMMARY        .

The following e-filed documents, listed by NYSCEF document number (Motion 006) 182, 183, 184, 185, 186, 187, 188, 189, 190, 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 201, 202, 203, 204, 205, 206, 208, 210, 212

were read on this motion to/for               ENFORCEMENT          .

Plaintiff Denisia Martin ("Plaintiff") filed an action for malicious prosecution, false arrest, false imprisonment, and vicarious liability against her former employer, defendant Saks & Company LLC ("Saks") and against other individual corporate defendants Saks Incorporated, Saks Fifth Avenue, LLC, Saks &Company, Saks Fifth Avenue Inc., and Saks Department Stores (together "Defendants").

Presently before the court are Defendants' motion for summary judgment pursuant to CPLR 3212, Plaintiff's motion to enforce and compel a purported settlement agreement pursuant to CPLR 2104, Plaintiff's motion to impose sanctions on Defendants pursuant to 22 NYCRR 130-1.1, and Defendants' cross-motion to impose sanctions against Plaintiff pursuant to 22 NYCRR 130-1.1.

158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC Page 1 of 23
Motion No. 004 006

1 of 23

For the reasons stated below, Plaintiff's motion to enforce the purported settlement agreement and her motion to impose sanctions on Defendants is denied. Defendants' motion for sanctions is denied and Defendants' motion for summary judgment is granted.

### BACKGROUND FACTS AND PROCEDURAL HISTORY

A. The Incident

This case involves two no-receipt transactions that Plaintiff processed for Amy Kerr ("Kerr"), a former employee of Saks.

Michael Petrone ("Petrone"), the manager for the Assets and Protection Department at Saks, which is located on Fifth Avenue, New York, affirmed that he held the position since 2015 (NYSCEF Doc No. 120, Petrone Affirmation, ¶3). His department is responsible for protecting the store inventory by "monitoring shortage results, shortage control, price changes, return transactions, receipt reconciliation, and paperwork errors" (*id.*, ¶ 4). The department also handles investigations and apprehensions related to external and internal theft (*id.*, ¶ 5). According to Petrone, the department uses an electronic platform called Exception Based Reporting ("XBR") to protect and monitor the store merchandise, and no one in the department can change the transactional data stored in XBR (*id.*, ¶¶ 6-7).

Petrone testified that when a customer returns merchandise with a receipt, the sales associate must verify that the merchandise being returned matches the receipt, enter the information in the register system, and process the return (NYSCEF Doc No. 215, Affirmation of Counsel for Plaintiff in Opp. to Mot., Exhibit 2, Petrone Tr, p. 57). The refund for the receipt return goes back to the original form of payment (*id.*). Petrone testified, however, that per Saks' policy during the relevant time, when the customer made a no-receipt return, the sales associate would verify that the item being returned matched its tickets and would ask the customer for their

identification before processing the return (*id.*, p. 58). The merchandise credit from the no-receipt

return is known as electronic merchandise credit ("EMC") and it was placed on a gift card (*id.*).

Petrone affirmed that on July 2015, the XBR auto reporting alerted his team that "a series

of 'no-receipt returns' were occurring at the store" (NYSCEF Doc No. 120, ¶ 8). This prompted

the department, specifically Petrone and Lisa Benson ("Benson"), to start an investigation

(NYSCEF Doc No. 215, pp. 67-69). They used the XBR reporting and surveillance video to

determine that plaintiff was the sales associate who processed these no-receipt transactions

(NYSCEF Doc No. 120, ¶ 9; NYSCEF Doc No. 215, pp. 52-53, 67-69). Specifically, Plaintiff

processed the no-receipt returns for Kerr, who was a former employee at the time, and entered

other customer names and information within the register system known as "POS" (NYSCEF Doc

No. 215, pp. 13-14, 52, 214-215). Put simply, Plaintiff issued the electronic credit from the no-

receipt returns to other individuals' names, even though Kerr was making the no-receipt returns

(*id.*, 214-215).

Petrone emphasized that Plaintiff violated Saks's store policy because she processed the

no-receipt returns for Kerr by entering false information (NYSCEF Doc No. 215, pp. 14, 53).

Petrone testified that the department only investigated the policy violation aspect of these no-

receipt returns, not the fraud aspect of the different credit cards being used for the purchases of the

merchandise, because Saks was not the victim of such transactions (*id.*, pp. 207, 217). According

to Petrone, the true card holders, who Petrone does not know, were the victims of these transactions

(*id.*).

Petrone testified that his department interviewed Plaintiff as part of their investigation,

which took place in an office within the department (*id.*, p. 232). Petrone described the office to

be a "normal office" with no windows, a desk, three chairs, a flat screen tv, a microwave and a

[* 3]

refrigerator (*id.*). Petrone emphasized that during the interview Plaintiff was not forced to stay, was free to leave at any time, and was not directed what to say in relation to her statement (*id.*, p. 255). At the conclusion of the investigation, Saks's human resources department decided to terminate Plaintiff's employment and not bring criminal charges against her (*id.*, p.144; NYSCEF Doc No. 120, ¶ 10).

Detective Ng from NYPD 17th precinct contacted Petrone regarding a credit card fraud investigation after Plaintiff's job termination with Saks (NYSCEF Doc No. 120, ¶ 11). Petrone affirmed that he did not know detective Ng prior to this interaction and provided him with the transactional data and video surveillance that he requested (*id.*, ¶¶ 11-13). Petrone affirmed that he had no other involvement in detective Ng's NYPD investigation, and he never encouraged NYPD to pursue plaintiff's arrest and prosecution (*id.*, ¶¶ 13-15). In fact, Petrone testified that when Saks moves forward with criminal charges it must do so only though the 18th precinct (NYSCEF Doc No. 215, p. 295).

Benson, the director of internal investigations in the department of asset protection at Saks, also testified (NYSCER Doc No. 123, Diamond Affirmation, Exhibit B, Beson Tr, pp. 16-17). Benson explained that her department received a concerning alert, through XBR, of a transactional patterned activity leading to their investigation of Plaintiff (*id.*, pp. 51-52). Due to the department's investigation, Plaintiff was suspended in September 2015 and then was terminated by Saks's human resources because she violated store policy (NYSCEF Doc No. 123, pp. 90-91, 96-97). The investigation, coupled with Plaintiff's statement that she input false information into the Defendant's system to facilitate no-receipt returns for Kerr, was the basis for her suspension (NYSCEF Doc No. 123, pp. 196-197). Benson emphasized that her department's investigation of Plaintiff did not include any outside entities, was not a criminal investigation, and the asset

**158089/2017  MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No.  004 006**

**Page 4 of 23**

4 of 23

[* 4]

department had no intention to press criminal charges or contact law enforcement to report the incident (NYSCEF Doc No. 123, pp. 113, 116, 127). Benson further testified that Plaintiff wrote a statement regarding the incident and signed it (NYSCEF Doc No. 123, p. 165).

Saks's investigative findings show, in relevant part, that on August 22, 2015, Plaintiff processed two no-receipt returns for Kerr (NYSCEF Doc No. 129, Diamond Affirmation, exhibit H, Investigation Documents; NYSCEF Doc No. 128, Diamond Affirmation, Exhibit G, Investigation Documents). Plaintiff issued an EMC to Kerr for one of the no-receipt returns (NYSCEF Doc No. 129). The item for which this EMC was issued did not trace back to any original merchandise purchased at a Saks according to Saks's XBR (*id.*). The other no-receipt return that Plaintiff processed was for a merchandise that was purchased using a stolen credit card originally rung by Plaintiff, and the EMC was issued to a male named Peter (*id.*).

Plaintiff testified that she worked for Saks from 2013 to 2015 (NYSCEF Doc No. 214, Oremland Affirmation, Exhibit 1, Plaintiff's Tr, p. 50). She started as a sales associate and was promoted to a brand ambassador at a "high end department" (*id.*, p. 52). During her employment with Saks, Plaintiff testified that she was never told to check customer's identification cards when making purchases, except in situations where the customer did not have a receipt and the identification was needed to look up the transaction (*id.*, p. 115).

Plaintiff testified that in September of 2015 a male and a female Saks employee took her to "a little dungeon downstairs," which was dimly lit and dark (*id.*, pp. 116-118). The male employee told Plaintiff she made two transactions to Kerr that had issues (*id.*, pp. 118-119, 121). They "forced" Plaintiff to write a statement to keep her job and distance herself from the situation, and coached her what to say (*id.*, pp. 119, 121).

**158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No. 004 006**

**Page 5 of 23**

5 of 23

Plaintiff emphasized that she could not leave until she provided the written statement (*id.*, p. 119). She asked to leave, but was told by the Saks male and female employee that she could leave only after she wrote the statement (*id.*, pp. 123-124). Plaintiff emphasized that the woman employee was in front of the door of the room where she was taken (*id.*, p. 124). After Plaintiff wrote the statement, she was told to go home (*id.*, p. 132). Plaintiff testified that subsequently she received a termination letter in the mail telling her not to return to work or to the premises (*id.*, pp. 130-131).

During the testimony, Plaintiff authenticated the written statement that she handwrote during her interview by Saks (*id.*, pp. 124-125). In the written statement, Plaintiff admits that she processed two returns for Kerr using incorrect information at Kerr's request (NYSCEF Doc No. 132, Diamond Affirmation, Exhibit P, Plaintiff's Written Statement). Plaintiff wrote that she assumed that Kerr made this request of her because she did not want to be denied making the returns (*id.*).

Plaintiff testified that during her employment with Saks, generally, if a return was made without a receipt, the refund would go on a gift card (NYSCEF Doc No. 214, p. 128). If there was a receipt for a return, however, the refund would go the original form of payment (*id.*). Plaintiff emphasized that Kerr made two returns but could not remember if both were no-receipt returns (*id.*, pp. 128-130). Plaintiff testified that one of Kerr's return refunds was issued under her name and one was issued under Peter (*id.*, pp. 128-129). Plaintiff explained that both refunds were handed to Kerr, however, since she made the returns (*id.*, pp. 128-129).

Plaintiff testified that following her Saks job termination, she was arrested in February 2016 by NYPD (*id.*, p. 150). She was initially at central booking and then taken to Rikers Island and experienced very poor conditions while in custody (*id.*, pp. 150-151). Plaintiff testified that

158089/2017  MARTIN, DENISIA vs. SAKS & COMPANY LLC                                    Page 6 of 23
Motion No.  004 006

6 of 23

she was charged with multiple felonies, but the case was eventually sealed and dismissed in September 2016 because the prosecution did not "have anything to back" up the charges (*id.*, pp. 183-184). She believes that Saks brought the criminal charges against her because "they falsely accused" her and the police told her that it was Saks (*id.*, pp. 191-192, 196, 204). Plaintiff testified that she does not know what Saks's motive was against her (*id.*, p. 201). As to the damages, Plaintiff testified that she is claiming mental distress because the incident caused her to suffer from anxiety and depression (*id.*, pp. 210, 213).

Plaintiff's criminal complaint shows that she was charged with seven counts, including for grand larceny and unlawful possession of personal identification information (NYSCEF Doc No. 135, Diamond Affirmation, Exhibit N, Plaintiff's Criminal Complaint). The complaint states in pertinent part, that Plaintiff used multiple credit cards to make transactions, and that fifteen individual informants indicated that they were the legitimate credit card owners of those transactions, and they did not give plaintiff the permission or authority to use such credit cards (*id.*). At Plaintiff's arraignment, bail was set at $5000 (NYSCEF Doc No. 136, Diamond Affirmation, Exhibit O, Plaintiff's Arraignment Sheet). Plaintiff's case was then dismissed by a "motion of DA" (NYSCEF Doc No. 137, Diamond Affirmation, Exhibit P, Certificate of Disposition).

B. Procedural Posture

Plaintiff filed this lawsuit on September 8, 2017. Defendants filed a pre-answer motion to dismiss, and the court dismissed a number of Plaintiff's claims, except for malicious prosecution, false arrest, false imprisonment, and vicarious liability (NYSCEF Doc No. 34). The parties exchanged discovery, and Plaintiff filed the note of issue on January 31, 2023 (NYSCEF Doc No. 83).

**158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No. 004 006**

Page 7 of 23

Defendants then filed a motion for summary judgment and when Plaintiff failed to file an opposition to her motion, Defendants filed their reply. In response, Plaintiff filed an affirmation in opposition to Defendant's motion and an order to show cause arguing that the parties have reached a valid and binding settlement for compensatory damages only. The court declined to sign the Plaintiff's proposed order to show cause on the basis that the relief sought was not an emergency.

Plaintiff then filed a motion to enforce and compel the settlement pursuant to CPLR 2104 and to impose sanctions against defendants under 22 NYCRR 130-1.1 (NYSCEF Doc No. 182). In response, Defendants opposed and cross moved to award Defendants' costs for Plaintiff's "frivolous motion." Plaintiff filed an affirmation in opposition to Defendant's cross motion and a reply in support of its motion (NYSECF Doc No. 206).

After oral arguments, Plaintiff filed his opposition to Defendants' motion for summary judgment (NYSCEF Doc No. 213) and Defendants filed their reply in further support of their motion for summary judgment.

C. The Email Exchange Between the Parties Regarding Settlement

In 2024, the parties engaged in settlement negotiations, where they exchanged multiple emails:

- On August 20, 2024, Plaintiff's counsel sent an email to Defendants' counsel stating: in "connection with the settlement reached in the amount of [redacted] for compensatory damages" to please find the W-9 form for the firm (NYSCEF Doc No. 188, Oremland Affirmation in Support of Mot, Exhibit 5). The email also asked that Defendants send all the pertinent settlement documents and attached a letter stating that for the settlement reached, to please make all "checks payable to the [Plaintiff] and" the firm (*id.*).
- On August 30, 2024, Defendants' attorney sent an email enclosing a draft of the settlement agreement, which provided for two checks to be issued (NYSCEF Doc No. 193, Oremland Affirmation in Support of Mot, Exhibit 10).
- On September 4, 2024, Plaintiff's attorney emphasized that the parties reached a settlement for compensatory damages only and it did not consent to providing a form 1099 for Plaintiff (NYSCEF Doc No. 194, Oremland Affirmation in Support of Mot, Exhibit 11).

**158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No. 004 006**

Page 8 of 23

8 of 23

- On September 5, 2024, Defendants' attorney disagreed with Plaintiff's assessment regarding payment, stated that it would discuss the issue raised with their client, and asked that Plaintiff confirm that no other outstanding issues exist as to the settlement agreement (NYSCEF Doc No. 195, Oremland Affirmation in Support of Mot, Exhibit 12).
- On September 6, 2024, Defendants' attorney stated that because the payment to be made to Plaintiff constitutes as income, it is taxable and they requested Plaintiff's 1099 form (NYSCEF Doc No. 196, Oremland Affirmation in Support of Mot, Exhibit 13).
- On September 6, 2024, Plaintiff's attorney responded stating that aside from the disagreement regarding the settlement check and payment, the draft needed to be changed to include all the Defendant company entities/parties named in the action. Defendants' attorney disagreed, stating that numerous parties listed as Defendants are not legal entities (NYSCEF Doc No. 196, Oremland Affirmation in Support of Mot, Exhibit 13).
- On September 9, 2024, Plaintiff's counsel sent an email stating that "despite the misplaced view that settlement reached thereof [was] for alleged emotional distress damages," the settlement reached was for compensatory damages, generalized pain and suffering. The attorney further stated that the settlement was not for emotional damages because the court dismissed Plaintiff's causes of action for emotional distress (NYSCEF Doc No. 198, Oremland Affirmation in Support of Mot, Exhibit 14).
- On September 10, 2024, Defendants' attorney disagreed and emphasized that during Plaintiff's deposition, she testified that she was only seeking damages for "mental distress" and such injury is not excluded from the tax code (NYSCEF Doc No. 199, Oremland Affirmation in Support of Mot, Exhibit 15).

**DISCUSSION**

**A. Plaintiff's Motion to Enforce the Purported Settlement Agreement**

(1) <u>The Motion to Enforce the Purported Settlement</u>

Plaintiff argues that the settlement papers combined with the parties' email exchange resulted in an enforceable settlement agreement subscribed by the parties. Defendants oppose and argue that while the parties engaged in settlement negotiations, there is no enforceable settlement agreement because there was no acceptance or a meeting of the minds. According to Defendants, there was no agreed upon terms regarding a final settlement agreement: the terms of the payment and three other material provisions remained in dispute, and the draft agreement was not signed by the parties (*see* NYSCEF Doc No. 201).

**158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No.  004 006**

**Page 9 of 23**

[* 9]

9 of 23

For settlement agreements to be binding, other than the ones made between parties in open court, they must conform to requirements under CPLR 2104. The statute provides "in pertinent part: 'An agreement between parties or their attorneys relating to any matter in an action ... is not binding upon a party unless it is in a writing subscribed by him or his attorney ....'" (*Matter of Philadelphia Ins. Indem. Co. v Kendall*, 197 AD3d 75, 78 [1st Dept 2021]; *see also* CPLR 2104).

Settlement agreements are subject to contract law principles. To establish the existence of an enforceable agreement, a plaintiff must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 NY Jur. 2d, Contracts § 9; *see also Kolchins v Evolution Mkts., Inc.*, 128 AD3d 47, 59 [1st Dept 2015], affd 31 NY3d 100 [2018]; *Forcelli v Gelco Corp.*, 109 AD3d 244, 248 [2d Dept 2013] ["settlement agreements are subject to the principles of contract law"]).

"An electronic-mail string can form the basis for a binding settlement in accordance with CPLR 2104, so long as there is consent in writing sufficient to meet the 'subscribing' requirement, and the material terms are manifest" (*CoPilot Travel, Inc. v Magstar Capital, LLC*, 86 Misc 3d 1271(A), 2025 NY Slip Op 51388 [U], *1 [Sup Ct, NY County 2025] [citing 2024 commentary to CPLR 2104; *Rowald v Dormitory Authority*, 199 AD3d 477 [1st Dep't 2021]; *see also Matter of Philadelphia Ins. Indem. Co.*, 197 AD3d at 81).

"Manifestation of mutual assent to an exchange ordinarily takes the form of an offer or proposal by one party followed by an acceptance by the other party or parties" (*Rhodium Special Opportunity Fund, LLC v Life Trading Holdco, LLC*, 2014 WL 1313370, 2014 NY Slip Op 30840[U], * 3 [Sup Ct, NY County 2014], affd 2015 NY Slip Op 04250 [1st Dept 2015] [citations omitted]. "As a general rule, in order for an acceptance to be effective, it must comply with the terms of the offer and be clear, unambiguous and unequivocal'" (*Kowalchuk v Stroup*, 61 AD3d

158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC                    Page 10 of 23
Motion No. 004 006

10 of 23

118, 122 [1st Dept 2009]; *see also Kolchins*, 128 AD3d at 59-60). "If the acceptance does not comply with the mirror rule and has terms different from the offer, it is considered a counter-offer, and equivalent to a rejection" (*Rhodium Special Opportunity Fund, LLC*, 2014 NY Slip Op 30840[U], * 3). "[M]eeting of the minds must include agreement on all essential terms" (*Kolchins*, 128 AD3d at 59; *see also Rhodium Special Opportunity Fund, LLC*, 2014 NY Slip Op 30840[U], * 3 ["An understanding of all essential terms of the agreement needs to be present for an email to indicate that a meeting of minds has taken place"]). If the essential terms "are omitted from the[] agreement, or if some of the terms included are too indefinite, no legally enforceable contract will result" (*Kolchins*, 128 AD3d at 61 [citations omitted]). Further, "where the parties anticipate that a signed writing is required, there is no contract until one is delivered" (*Amcan Holdings, Inc. v Canadian Imperial Bank of Commerce*, 70 AD3d 423, 426 [1st Dept 2010]).

Here, Plaintiff failed to show that the email exchange and the draft settlement agreement between the parties constitute an enforceable agreement. There is no dispute that the parties did not sign a finalized written settlement agreement. Rather, Plaintiff argues that the email communication between the parties manifested an acceptance of the settlement agreement. The email communication between the parties, however, does not show that the parties mutually assented to all essential terms.

While the emails show that the parties were working on a draft settlement document and agreed on a settlement amount, the emails do not demonstrate a clear mutual accord as to what type of damages the settlement would cover, the tax implications of the amount to be paid, and which defendant entities were to be included and released in the settlement. This is evidenced by the September 6, 2024 email exchange, where Plaintiff's attorney confirms that the issues of settlement payment and which named defendant entities/parties needed to be included in the

**158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC** **Page 11 of 23**
**Motion No. 004 006**

11 of 23

settlement were still outstanding (NYSCEF Doc No. 196). Defendants' attorney responded by emphasizing that numerous parties listed as defendants are not legal entities and that the settlement payment was not excluded from the tax code (NYSCEF Doc Nos. 196, 199; *see ASV Technologies, Inc.*, 2020 WL 3839744, 2020 N.Y. Slip Op. 32208[U], *7 [Sup Ct, NY County 2020] ["these emails simply do not convey [defendants'] clear agreement or acquiescence to the [agreement]"). These emails demonstrate that the parties were proposing different terms that were not definite.

It is the court's view that these unresolved issues are essential terms to the settlement agreement because the tax implications affect the ultimate payment amount and the disagreement on which named defendants would be released under the settlement affects the finality of the case (*see Rubin v Deckelbaum*, 2014 WL 3924611, 2014 NY Slip Op 32150[U] [Sup Ct, Kings County 2014] [the court found that the parties' emails were ambiguous as to which defendants would be released under the proposed agreement and therefore *a material difference* in terms] [emphasis added]; *Sterling Fifth Associates v Carpentille Corp., Inc.*, 10 AD3d 282, 283 [1st Dept 2004] ["The terms of the proposed compromise also left open for future negotiations the *significant issue* of the tax ramifications of the settlement"] [emphasis added]). The submitted emails in this case thus merely show that the parties continued to have discussions on "further occurrences necessary to finalize the agreement" (*Teixeira v Woodhaven Ctr. of Care*, 173 AD3d 1108, 1109 [2d Dept 2019]). The parties' email exchange on the tax consequences alone "does not show a mutual understanding of the material terms that would be required to show a meeting of the minds" (*Rhodium Special Opportunity Fund, LLC*, 2014 NY Slip Op 30840[U], * 3).

The parties' email communication thus does not demonstrate a clear offer and acceptance to constitute a valid settlement agreement. "An email that merely confirms a purported settlement is not necessarily sufficient to bring the purported settlement into the scope of CPLR 2104"

158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC Page 12 of 23
Motion No. 004 006

12 of 23

(*Teixeira*, 173 AD3d at 1109). In fact, the parties' back-and-forth email exchange requesting to make revisions in the draft agreement and their disagreements regarding multiple terms, including the tax implications of the payment, constitute counteroffers because they do not comply with the mirror rule and raise terms different from the opposing offer (*Rhodium Special Opportunity Fund, LLC*, 2014 NY Slip Op 30840[U], * 3). The case record does not show that these counter offers made were "ultimately accepted by" the corresponding opposing party (*CoPilot Travel, Inc.*, 86 Misc 3d 1271(A), 2025 NY Slip Op 51388 [U]* 2 [Sup Ct, New York County 2025]).

The court will not address the issue of whether the purported settlement payment is taxable, as the issue is moot considering the court's finding that no enforceable settlement agreement exists.

For all these reasons, Plaintiff's motion to enforce a purported settlement agreement is denied.

(2) The Motions for Sanctions

Plaintiff seeks sanctions against Defendants and their counsel pursuant to 22 NYCRR 130-1.1 for their "continued failure, willful behavior and unreasonable refusal and withholding to pay the binding settlement for compensatory damages reached" between the parties (NYSCEF Doc No. 183, p. 2). Plaintiff further seeks an order awarding her costs, disbursements and attorney's fees for incurring while filing his motion to enforce the settlement (*id.*, p. 22).

In response, Defendants oppose Plaintiff's motion for sanctions as unwarranted and cross move for sanctions against Plaintiff arguing that her motions are frivolous (NYSCEF Doc No. 201). Specifically, Defendants argue that there was nothing frivolous about disagreeing that there was no enforceable settlement agreement.

22 NYCRR 130-1.1 provides in pertinent part that:

"[t]he court, may award to any party or attorney in any civil action or proceeding before the court, except where prohibited by law, costs in the form of

158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC          Page 13 of 23
Motion No. 004 006

13 of 23

reimbursement for actual expenses reasonably incurred and reasonable attorney's fees, resulting from frivolous conduct as defined in this Part"

(22 NYCRR 130-1.). Frivolous conduct exists if:

"(1) it is completely without merit in law and cannot be supported by a reasonable argument for an extension, modification or reversal of existing law; (2) it is undertaken primarily to delay or prolong the resolution of the litigation, or to harass or maliciously injure another; or (3) it asserts material factual statements that are false . . . Frivolous conduct shall include the making of a frivolous motion for costs or sanctions under this section"

(22 NYCRR 130-1.1). To determine whether the undertaken conduct is frivolous, "the court shall consider . . . circumstances under which the conduct took place . . . and whether or not the conduct was continued when its lack of legal or factual basis was apparent, or should have been apparent, or was brought to the attention of counsel or the party." (*Tavella v Tavella*, 25 AD3d 523, 524-525 [1st Dept 2006] [citing 22 NYCRR § 130-1.1]).

Applying the law to the facts at hand, both parties have shown a good faith belief that their client's interests were being compromised by the other side's interpretation of whether there was a binding settlement agreement. Thus, Defendants' refusal to pay the purported settlement amount and Plaintiff's motion to enforce the purported settlement agreement cannot be considered frivolous conduct. The evidence in the case shows that Defendants had a right to contest enforceability and the very fact that this court finds that the agreement is not binding further shows that Defendants' position was not without merit. There is also insufficient evidence to show that either party undertook these measures primarily to delay or prolong the resolution of the litigation or that there was a persistent pattern of meritless motions. "Generally, the imposition of sanctions involves a more persistent pattern of repetitive or meritless motions" (*Sarkar v Pathak*, 67 AD3d 606, 607 [1st Dept 2009]).

**158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No.  004 006**

Page 14 of 23

For all these reasons, the court denies both plaintiff and defendants' motions to impose sanctions.

## B. Defendants' Motion for Summary Judgment

A party moving for summary judgment under CPLR 3212 "must make prima facie showing of entitlement to judgment as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Alvarez v Prospect Hosp.,* 68 NY2d 320, 324 [1986]). The "facts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). Once the moving party has met this prima facie burden, the burden shifts to the non-moving party to furnish evidence in admissible form sufficient to raise a material issue of fact (*Alvarez*, 68 NY2d at 324). The moving party's "[f]ailure to make such prima facie showing requires a denial of the motion, regardless of the sufficiency of the opposing papers" (*id.*).

(1) The Malicious Prosecution Claim

"To prevail on a malicious prosecution claim, a plaintiff must establish four elements: (1) the initiation of a criminal proceeding by the defendant against the plaintiff, (2) termination of the proceeding in favor of the accused, (3) lack of probable cause, and (4) malice" (*Brown v Sears Roebuck and Co.*, 297 AD2d 205, 208 [1st Dept 2002] [citations omitted]). The claim is defeated if "any one of these elements" are not established (*id.*).

Defendants argue that Plaintiff's malicious prosecution claim should be dismissed because Defendants did not initiate the criminal proceeding against Plaintiff, but merely gave NYPD the information it requested to cooperate. According to Defendants, the dismissal of Plaintiff's criminal case does not negate probable cause for her arrest and Plaintiff cannot show malice

158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC
Motion No. 004 006

Page 15 of 23

because she testified that she did not know Defendants' motive. In opposition, Plaintiff argues that there are triable issues of fact as to how Plaintiff's violation of Saks's store policy led to her arrest.

Defendants made a prima facie showing that while it cooperated with NYPD, it did not initiate the criminal proceeding against Plaintiff.

> "In order for a civilian defendant to be considered to have initiated the criminal proceeding . . . [t]he defendant must have affirmatively induced the officer to act, such as taking an active part in the arrest and procuring it to be made or showing active, officious and undue zeal, to the point where the officer is not acting of his own volition"

(*Oszustowicz v Admiral Ins. Brokerage Corp.*, 49 AD3d 515, 516 [2d Dept 2008] [citations omitted]). The evidence in the record merely establishes that Saks internally investigated Plaintiff's no-receipt returns using transactional data stored in XBR (which could not be changed by anyone at assets and protection department at Saks) and video surveillance (NYSCEF Doc No. 120, ¶¶ 6-7, 9; NYSCEF Doc Nos. 128 - 30). Through its investigation, Saks determined that Plaintiff violated the store policy while processing two no-receipt transactions, leading to her termination.

Notwithstanding Plaintiff's argument, the case record does not establish that Saks brought the criminal charges against her. Petrone and Benson both testified that while HR terminated Plaintiff, it decided not to bring criminal charges against her. This is evidenced by plaintiff's criminal complaint and Petrone's testimony that Saks was not the victim of the no-receipt transactions (NYSCEF Doc No. 215, pp. 207, 217). Rather it was the credit card holders with which their cards were used for the transactions without their permission (NYSCEF Doc No. 135; NYSCEF Doc Nos. 215, pp. 207, 217). Specifically, the victims of the crime are described as informants in Plaintiff's complaint, who state that they were the lawful owners of the credit cards used for the transactions listed in the complaint, and they did not give Plaintiff the permission or

[* 16]

authority for the credit cards to be used for those purchases (NYSCEF Doc No. 135, p. 6). The evidence that Defendants did not initiate a criminal proceeding against Plaintiff is further supported by Petrone's testimony that if Saks filed criminal charges against someone, it had to go through the 18th precinct, not through the 17th precinct, where detective Ng worked (NYSCEF Doc No. 215, p. 295).

The evidence in the record also fails to establish that Defendants' *affirmatively induced* law enforcement to bring criminal charges against plaintiff (emphasis added). Petrone affirmed that he did not know detective Ng prior to being contacted by him regarding a credit card fraud investigation, and that he merely provided transactional data and surveillance videos per detective Ng's request (NYSCEF Doc No. 120, ¶¶ 11-13). "[F]urnishing information to law enforcement authorities who are then free to exercise their own judgment as to whether an arrest should be made and criminal charges filed, will not be held liable for false arrest or malicious prosecution" (*Du Chateau v Metro-N. Commuter R. Co.*, 253 AD2d 128, 131 [1st Dept 1999]). Petrone further emphasized that he did not have other involvement in detective Ng's or NYPD's investigation, and he affirmed that he never encouraged NYPD to pursue Plaintiff's arrest and prosecution (NYSCEF Doc No. 120, ¶¶ 13-14). It was detective Ng's investigation that led to Plaintiff's arrest as shown in her criminal complaint, which was signed by detective Ng (NYSCEF Doc No. 135).

There is also no evidence that the information that Petrone provided to detective Ng was false. Plaintiff does not dispute the validity of the transactional data stored in XBR and the surveillance videos that were provided to NYPD. Instead, Plaintiff appears to argue that because her case was dismissed, the information Saks provided to NYPD was false. This argument is flawed because the dismissal of Plaintiff's criminal case at the request of the district attorney does not necessarily signify that the evidence in which her arrest was based was false. There are many

**158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No.  004 006**

Page 17 of 23

reasons why prosecutors may dismiss a case (i.e. expiration of the time to prosecute, uncooperative complainant, insufficient evidence to prove beyond a reasonable doubt at trial, etc.). There is thus nothing in the record to suggest that Defendants furnished false information to NYPD, and Plaintiff fails to raise an issue of fact showing otherwise.

Because Plaintiff failed to raise an issue of fact as to the first element, the court will not address the remaining elements of the malicious prosecution cause of action: the claim is defeated if "any one of these elements" are not established (*Brown*, 297 AD2d at 208).

For all these reasons, the court grants Defendants' motion to dismiss plaintiff malicious prosecution claim.

(2) The False Arrest and False Imprisonment Claims

Defendants argue that Plaintiff's false arrest and false imprisonment claims are time barred and there is no evidence that Saks or its employees commenced or instigated NYPD to arrest Plaintiff. Defendants further argue that because Plaintiff fails to oppose the statute of limitations argument, she abandoned the claim. In response, Plaintiff opposes and argues that Defendants' motion should be denied because there is a triable issue of fact that Defendants induced NYPD to act and arrest Plaintiff. According to Plaintiff, she was falsely imprisoned not only when NYPD arrested her, but also by the Defendants when Petrone and Benson interviewed her.

"A plaintiff alleging a claim for *false arrest or false imprisonment* must show that the defendant intended to confine the plaintiff, that the plaintiff was conscious of the confinement and did not consent to it, and that the confinement was not otherwise privileged" (*Hernandez v City of New York*, 100 AD3d 433, 433 [1st Dept 2012] [emphasis added]; *see also Roberts v City of New York*, 171 AD3d 139, 145-146 [1st Dept 2019], affd 34 NY3d 991 [2019]).

"To sustain a cause of action for false arrest and false imprisonment, a plaintiff must show that the defendant took an active role in the prosecution of the plaintiff,

[* 18]

such as giving advice and encouragement or importuning the authorities to act, and that the defendant intended to confine the plaintiff"

(*Celnick v Freitag*, 242 AD2d 436, 437 [1st Dept 1997] [citations omitted]). It is not sufficient that "defendant's words or actions caused a police officer to confine [her]; plaintiff must show that the defendant 'directed an officer to take [her] into custody'" (*Du Chateau*, 253 AD2d at 132).

As an initial matter, Plaintiff for the first time argues that in addition to NYPD confining her after her arrest, she was also falsely imprisoned by Saks when Petrone and Benson interviewed her. The court will not entertain this argument because there are no factual allegations, whatsoever, as to this claim in Plaintiff's complaint and Plaintiff brings up this argument in her opposition for the first time. "A court should not consider the merits of a new theory of recovery, raised for the first time in opposition to a motion for summary judgment, that was not pleaded in the complaint" (*Ostrov v Rozbruch*, 91 AD3d 147, 154 [1st Dept 2012]). The court will thus only address Plaintiff's false arrest and false imprisonment claims as they relate to her arrest by NYPD.

Plaintiff's false arrest and false imprisonment claims are time barred. CPLR 215 (3) requires that actions for false arrest and false imprisonment "be commenced within one year" (CPLR 215 [3]). "New York State common-law claims for false arrest and false imprisonment accrue on the date that the plaintiff is released from custody" (*McQueen v City of New York*, 209 AD3d 469, 470 [1st Dept 2022] [citations omitted]). Applying the law here, Plaintiff was arraigned on February 26, 2016, and bail was set with 48 hours surety (NYSCEF Doc No. 136). Plaintiff testified that her boyfriend at the time paid the bail amount on the same day, but she was not released until the bail documents were reviewed (NYSCEF Doc No. 214, pp. 165-167). Although Plaintiff does not remember the exact date she was released, she testified that it was shortly after her arrest and her boyfriend paid the bail amount on the same day that the bail was set (*id.*, pp.

165-167; 172-173). Plaintiff then filed this case on September 8, 2017, which was beyond the statutory period for her false arrest and false imprisonment claims.

In any event, as stated *supra*, Defendants merely furnished information to detective Ng. Defendants thus cannot be held liable for false arrest and false imprisonment (*see Du Chateau*, 253 AD2d at 131; *see also Breytman v Olinville Realty, LLC*, 46 AD3d 484, 486 [1st Dept 2007]). And Plaintiff fails to raise an issue of fact to show that Defendants directed detective Ng to take her into custody (*see Du Chateau*, 253 AD2d at 132).

For all these reasons, Defendants' summary judgment motion to dismiss plaintiff's claims for false arrest and false imprisonment are granted.

(3) The Vicarious Liability Claim

Defendants argue that Plaintiff's vicarious liability claim fails because there is no independent cause of action or an underlying party for vicarious liability to attach. In response Plaintiff opposes and argues that the claim for vicarious liability is "properly pleaded as a separate and independent claim" (NYSCEF Doc No. 213, p. 12). Plaintiff further contends that Defendants are liable for its employee's actions under the theory of the respondent superior. According to Plaintiff, through Saks employees Patrone and Benson, Defendants unlawfully and wrongfully confined and apprehended Plaintiff against her will in the basement when they interviewed her on September 15, 2015 (*id.*, p. 13).

"[A]n employer may be vicariously liable for the tortious acts of its employees only if those acts were committed in furtherance of the employer's business and within the scope of employment" (*N.X. v Cabrini Med. Ctr.*, 97 NY2d 247, 251 [2002]; *see also Summors v Port Auth. of N.Y. & N.J.*, 203 AD3d 558, 561 [1st Dept 2022] [citations omitted]). "Pursuant to this doctrine, the employer may be liable when the employee acts negligently or intentionally, so long as the

**158089/2017 MARTIN, DENISIA vs. SAKS & COMPANY LLC** **Page 20 of 23**
**Motion No. 004 006**

20 of 23

tortious conduct is generally foreseeable and a natural incident of the employment" (*Judith M. v Sisters of Charity Hosp.*, 93 NY2d 932, 933 [1999] [citations omitted]).

Because the court has dismissed all substantive underlying claims for malicious prosecution, false arrest and false imprisonment, the vicarious liability claims against Defendants cannot stand because the claim is derivative. The court found *supra* that Saks, through its employees Petrone and Benson, did not initiate the criminal proceedings against Plaintiff and merely furnished information to NYPD (*Karaduman v Newsday, Inc.*, 51 NY2d 531, 546 [1980] ["there can be no vicarious liability on the part of the employer if the employee himself is not liable"] [citations omitted]; *see also Wilmar Sugar Pte. Ltd. v Chiaradia*, 2025 N.Y. Misc. LEXIS 126, *8, 2025 NY Slip Op 300088 [U] [Sup Ct, NY County 2025] [citation omitted]).

For the foregoing reasons, Plaintiff's claim for vicarious liability is dismissed.

(4) <u>Claims Against Individual Corporate Defendants</u>

Defendants argue that Plaintiff's naming entities, other than Saks, such as Saks Incorporated, Saks Fifth Avenue, LLC, Saks & Company, Saks Fifth Avenue Inc., and Saks Stores as Defendants is improper, as they are not legal entities associated with Plaintiff's employment. Defendants further argue that even if these parties were properly named, Plaintiff cannot pierce the corporate veil. In opposition, Plaintiff does not address or oppose this argument, and Defendants argue that Plaintiff has abandoned the claim as result.

"[A]n attempt of a third party to pierce the corporate veil does not constitute a cause of action independent of that against the corporation; rather it is an assertion of facts and circumstances which will persuade the court to impose the corporate obligation on its owners" (*Matter of Morris v New York State Dept. of Taxation and Fin.*, 82 NY2d 135, 141 [1993]; *see also Kahan Jewelry Corp. v Coin Dealer of 47th St. Inc.*, 173 AD3d 568, 568-569 [1st Dept 2019]).

**158089/2017  MARTIN, DENISIA vs. SAKS & COMPANY LLC**                          **Page 21 of 23**
**Motion No.  004 006**

21 of 23

The party seeking to pierce the corporate veil must show "that: (1) the owners exercised complete domination of the corporation in respect to the transaction attacked; and (2) that such domination was used to commit a fraud or wrong against the plaintiff which resulted in plaintiff's injury" (*Matter of Morris*, 82 NY2d at 141).

"Parent and subsidiary or affiliated corporations are, as a rule, treated separately and independently so that one will not be held liable for the contractual obligations of the other absent a demonstration that there was an exercise of complete dominion and control" (*Sheridan Broadcasting Corp. v Small*, 19 AD3d 331, 332 [1st Dept 2005]). However, "domination, standing alone, is not enough; some showing of a wrongful or unjust act toward plaintiff is required" (*Matter of Morris*, 82 NY2d at 141-142; *see also Musman v Modern Deb, Inc.*, 50 AD2d 761, 762 [1st Dept 1975] ["The control must actually be used to commit a wrong against the plaintiff and must be the proximate cause of the plaintiff's loss"] [citations omitted]). "Plaintiffs who seek to pierce the corporate veil 'bear a heavy burden'" (*Kahan Jewelry Corp.*, 173 AD3d at 568-569 [citations omitted]).

Here, Plaintiff does not address Defendants' argument that the claims against the corporate defendants must be dismissed or that the piercing of corporate veil is not justified. The case record is devoid of any evidence that Saks Incorporated, Saks Fifth Avenue LLC, Saks & Company, Saks Fifth Avenue Inc. and Saks Stores are the owners of Plaintiff's former employer Saks or that they exercise complete dominion and control over it related to the claims brought by Plaintiff. In any event, Plaintiff has failed to raise an issue of fact as to her claims of malicious prosecution, false arrest and false imprisonment, and vicarious liability against her former employer, Saks. The piercing of the corporate veil against Saks Incorporated, Saks Fifth Avenue LLC, Saks & Company, Saks Fifth Avenue Inc. and Saks Stores thus cannot stand.

**158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC**
**Motion No.  004 006**

**Page 22 of 23**

22 of 23

For all these reasons, plaintiff's claims against Saks Incorporated, Saks Fifth Avenue LLC, Saks & Company, Saks Fifth Avenue Inc. and Saks Stores are also dismissed.

## CONCLUSION and ORDER

Accordingly, it is hereby,

ORDERED that motion sequence number 4, the motion for summary judgment of Defendants Saks & Company LLC d/b/a SFA, Saks Incorporated, Saks Fifth Avenue, LLC, Saks &Company, Saks Fifth Avenue Inc., and Saks Department Stores against Plaintiff Denisia Martin, is granted and the complaint is dismissed against them; and it is further

ORDERED that motion sequence number 6, Plaintiff Denisia Martin's motion to enforce the purported settlement agreement and to impose sanctions on Defendants Saks & Company LLC d/b/a SFA, Saks Incorporated, Saks Fifth Avenue, LLC, Saks &Company, Saks Fifth Avenue Inc., and Saks Department Stores, is denied; and it is further

ORDERED that Defendants Saks & Company LLC d/b/a SFA, Saks Incorporated, Saks Fifth Avenue, LLC, Saks &Company, Saks Fifth Avenue Inc., and Saks Department Stores' cross-motion for sanctions against plaintiff Denisia Martin is denied.

| 12/5/2025 | | | | |
|---|---|---|---|---|
| **DATE** | | | LESLIE A. STROTH, J.S.C. | |
| CHECK ONE: | [X] CASE DISPOSED | | [ ] NON-FINAL DISPOSITION | |
| | [X] GRANTED | [ ] DENIED | [ ] GRANTED IN PART | [ ] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | | [ ] SUBMIT ORDER | |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | | [ ] FIDUCIARY APPOINTMENT | [ ] REFERENCE |

158089/2017   MARTIN, DENISIA vs. SAKS & COMPANY LLC                    Page 23 of 23
Motion No.  004 006

23 of 23